THE STATE OF KANSAS v. S. D. WITT.

1. MURDER—*Information—Name of Deceased, Misspelled.* In an information charging the defendant with murder, the name of the person killed was alleged to be "Bernhart;" and upon the trial his name was given by the different witnesses as "Banhart," "Benhart," "Beanhart," and "Bernhart." *Held,* That an instruction by the court that a mere difference in the spelling of the name which the deceased bore, and that alleged in the information to have been his name, is immaterial, if the name proved to be *idem sonans* with that stated in the information, was not inapplicable or erroneous.

2. ——— *Identity of Person Injured.* As a general rule the name of the person injured should be stated in the indictment or information with sufficient certainty so that the accused may know of what offense he is charged; but where the person injured is so well described, and his name is so given that his identity cannot be mistaken, the object of the rule has been accomplished.

3. ——— *Reasonable Doubt; No Error.* It is not error for the court to refuse a special instruction that if any one of the jury entertain a reasonable doubt of the defendant's guilt there must be an acquittal.

4. DUTY OF EACH JUROR; *Refusal of Instruction—Error.* In the trial of a criminal case it is the duty of the court, when requested by the defendant, to instruct the jury in regard to the individual duty and respon-

sibility resting upon each member of the jury in determining what the verdict should be. And where the defendant is charged with a capital offense, and the testimony to support the charge is wholly circumstantial, the refusal of the court to give a special instruction requested by the defendant that "if any one of the jury, after having considered all the evidence in this case, and after having consulted with his fellow-jurymen, should entertain a reasonable doubt of the defendant's guilt, or, after such consideration and consultation, should entertain a reasonable doubt as to whether or not the defendant was present at the time and place of the commission of the alleged homicide, then the jury cannot find the defendant guilty," is reversible error, although the court in its general charge may have instructed the jury as a body that before they can convict they must be satisfied beyond a reasonable doubt of the guilt of the defendant.

### Appeal from Chautauqua District Court.

INFORMATION for murder in the first degree. The defendant *S. D. Witt* was charged with the felonious shooting and killing of C. Bernhardt, in the county of Chautauqua, on the 23d day of September, 1883. Trial at the November Term, 1883, of the district court of said county. After the testimony had been concluded the defendant asked the court to give the jury the following special instructions:

"*First.* If the jury, or any one of the jury, after consideration of all the evidence in said cause, entertain a reasonable doubt as to whether or not the defendant, S. D. Witt, was present at the time and place of the alleged homicide, in the information in this case charged, then it is the duty of the jury to acquit the defendant.

"*Second.* If any one of the jury, after having considered all the evidence in this case, and after having consulted with his fellow-jurymen, should entertain a reasonable doubt of the defendant's guilt, or after such consideration and consultation should entertain a reasonable doubt as to whether or not the defendant was present at the time and place of the commission of the alleged homicide, then the jury cannot find the defendant guilty."

The court refused the instructions requested by the defendant, and thereupon gave to the jury the following general charge:

"*Gentlemen of the Jury:* The information in this case charges the defendant, S. D. Witt, with the crime of murder in the

first degree, in the willful, deliberate and premeditated murder of C. Bernhardt, in this county, on the 23d day of last September, by shooting him with a shot-gun.

"Murder in the first degree is punishable with death, in the discretion of the governor of the state, at such time as he may appoint, not less than one year from the time of conviction, the convict to remain confined within the walls of the state penitentiary at hard labor in the meantime, until the governor shall order his execution.

"Murder is the unlawful killing, by a person of sound memory and discretion, of any reasonable creature in being, and in the peace of the state, with malice aforethought, either express or implied.

"Every murder committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, is deemed murder in the first degree.

"That you may the better comprehend the legal definition of murder heretofore given, it is proper that I should explain the meaning of the term 'malice aforethought.' Malice in its legal sense differs from the meaning which it bears in common speech. In its common acceptation it signifies ill-will, hatred or revenge toward a particular individual. Such a condition of the mind would of course constitute malice in the eye of the law. But such is not necessarily its legal sense—the meaning intended to be conveyed by that term in the legal definition of murder. Malice in its legal sense denotes that condition of one's mind which is manifested by his intentionally doing a wrongful act without just cause or excuse. It means any wicked or mischievous intention of the mind. If one gives a perfect stranger a blow likely to produce death, he does it with malice if he does it intentionally and without just cause or excuse. So, in a prosecution for murder, which must always be stated in the charge to have been committed with malice aforethought, it is not necessary, in order to support such a charge, to show that the accused had any enmity against the deceased, nor would proof of the absence of ill-will furnish the accused any defense, if it had been proven that the act of killing was intentional, and had been done without justifiable cause or excuse.

"The term 'aforethought' means thought of beforehand, however short the time.

"In order to constitute murder in the first degree, a design must be formed to kill willfully, that is, with the intention that the act done should have the effect of taking the life of a human

being; maliciously, that is, with malice aforethought; as above defined, deliberately, that is, with cool purpose, after having weighed and considered the mode and means by which such design should be effected; and with premeditation, that is, the design to kill must have been formed before the act is performed by which the death is produced.

"In order to warrant convicting the defendant of the crime of murder in the first degree as charged in the information, you must be satisfied from the evidence, beyond a reasonable doubt, that he, the defendant, on or about the 23d day of September last, and in the county of Chautauqua and state of Kansas, did willfully, deliberately, premeditatedly, and of his malice aforethought, kill C. Bernhardt, by shooting him with a shot-gun loaded with gunpowder and leaden shot.

"A mere difference in the spelling of the name which the deceased bore, and that alleged in the information to have been his name, is immaterial, if the name proved be *idem sonans*, as the law books express it; that is, of the same sound or sounding the same, with the name stated in the information. It is necessary, however, that the name proved should at least be *idem sonans* with that stated in the information; and this is one of the material averments of the information which the state must establish by the evidence in the case.

"There has been some evidence produced on the behalf of the defendant in this case tending to prove an *alibi;* that is, that the defendant was at a different place than that at which the alleged homicide was committed at the time of its commission. It is hardly necessary that I should say to you that proof that a party accused of crime was so situated, at the time and place of its commission, as to render it impossible that he should have participated in its commission, is conclusive proof of the fact of his innocence. To make a complete *alibi,* however, the evidence should show that the accused was so situated at the time of the commission of the crime as to make it impossible that he could have been present at the place when the crime was committed. The defense of an *alibi* is in no sense an implied admission of the defendant's guilt in case the proof should fail to establish the *alibi.* One of the essential averments in the charge preferred against the defendant in a criminal case is, that he was present and committed the act which constitutes the crime, and any evidence introduced by the defendant tending to show that he was not so present, is legitimate for the purpose of disputing the averment in the charge against him that he was present at the commission

of the crime. So that, if, upon due consideration of the whole evidence in this case, including that tending to establish an *alibi* on the part of the defendant, you have a reasonable doubt of the defendant's guilt, you should return a verdict of not guilty.

"The defendant is presumed innocent until he is proved guilty, and if there is a reasonable doubt whether his guilt has been satisfactorily shown by the evidence, he should be acquitted. It is not sufficient in a criminal case that the facts and circumstances proven by the state should merely be consistent with the defendant's guilt. In order to justify a conviction, the facts and circumstances proven should not only point to the defendant's guilt, but when considered altogether, they should be susceptible of no other rational solution except upon the theory of the defendant's guilt.

"You are the exclusive judges of the weight of the evidence; of the facts proven; and of the credibility of the witnesses."

The defendant excepted to the general charge, and also to the ruling of the court in refusing the special instructions which he had requested. The jury returned a verdict, finding the defendant guilty as charged. He moved for a new trial upon several grounds, but relied principally upon the following:

"The court in its instructions misdirected the jury in material matters of law.

"The court refused to give to the jury certain special instructions in material matters of law asked for by defendant in due time, and which said instructions the defendant was entitled to have given as asked.

"The foreman of the jury, H. A. Koogle, was guilty of improper conduct, tending to prevent a fair, impartial and due consideration of the cause, in this: That said H. A. Koogle, after the jury had retired to their jury room to deliberate upon their verdict in the cause, and immediately upon their electing him as the foreman of the jury, proposed to the jury that as a number of them were christian men, that the deliberations of the jury be opened with prayer; and thereupon immediately in a loud voice in the hearing of said jury prayed at great length, tending thereby to exert upon the minds of the jury an undue influence.

"The jury, while in charge of the officer appointed to take

charge of them, and while deliberating upon the verdict in the cause, were improperly placed and kept in two separate rooms, with a door of communication between them, permitting the jurors to pass back and forth at will; said jury were thereby, during a great portion of their deliberations, separated, and conferred in clusters separately as to their verdict in the cause, out of the hearing of the others of the jury.

"The verdict of the jury in said cause is not sustained by sufficient evidence."

This motion was overruled, and judgment entered against the defendant, from which he appeals to this court, and asks a reversal of the judgment upon the grounds stated in his motion for a new trial.

*Charles J. Peckham,* and *Lemmon & Shartell,* for appellant.

*Ben. S. Henderson,* county attorney, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: The appellant was accused of the offense of murder in the first degree, and at the trial was convicted therefor. Among his objections to the conviction he complains of the charge of the court, where the jury are told that —

"A mere difference in the spelling of the name which the deceased bore, and that alleged in the information to have been his name, is immaterial, if the name proved be *idem sonans,* as the law books express it; that is, of the same sound, or sounding the same with the name stated in the information. It is necessary, however, that the name proved should at least be *idem sonans* with that stated in the information; and this is one of the material averments of the information which the state must establish by the evidence in the case."

It is claimed for the appellant that, according to the testimony, the name of the deceased was Constantine Banhart, and not "C. Bernhart," as alleged in the information, and that therefore the instruction above quoted was inapplicable and erroneous. The deceased and his family were Germans, and the testimony respecting his name was given by his widow and son, and is not entirely satisfactory. The widow testified that the name was "Constantine Benhart," and the son testi-

fied that the name was spelled "Benhart" and "Banhart," and that his father spelled it "Benhart" and "Beanhart." In other portions of their testimony both of the witnesses have given the name as "Bernhart." The neighbors of the deceased, many of whom were witnesses in the case, always spoke of and called him "Bernhart." In this state of the case it was a question of fact whether the names were the same, or of the same pronounciation, and one which it was proper to submit to the jury. As a general rule the name of the person injured

2. Rule as to name of person injured; identity.

should be stated in the indictment or information with sufficient certainty, so that the accused may know of what offense he is charged; but where a person is so well described, and his name so given that his identity cannot be mistaken, the object of the rule has been accomplished. It is true that the name of "Bernhart" differs somewhat in the spelling from "Beanhart," "Benhart," or "Banhart," yet it is obvious that they are substantially the same name, and from the testimony of the witnesses we conclude that as applied to the deceased they were pronounced substantially alike. It has been held that "Wilkerson" and "Wilkinson," as well as "Robinson" and "Robertson," are substantially the same name in derivation and sound. So, too, "Whyneard" and "Winyard" are held to be the same. Also, that "Reynoll" for "Reynolds" is no misnomer, but of the same derivation. So "Blankenship" and "Blackenship," as well as "Havely" and "Haverly," were held to be *idem sonans*. The difference between "Herriman" and "Harriman" is regarded as unimportant; and "Danner" and "Dannaher" are treated as *idem sonans*. The variance between "Lewis Geroux" and "Louis Girous," as well as "Sarah F. Tugaw" and "Sarah Tougaw" are held to be immaterial. ( *Wilkinson v. The State*, 13 Mo. 91 ; *The State v. Havely*, 21 id. 498 ; *The State v. Blankenship*, 21 id. 504 ; *The State v. Bean*,

1. Name of deceased; instruction, approved.

19 Vt. 530 ; *Gahan v. The People*, 58 Ill. 160 ; *Cotton v. The State*, 4 Tex. 260 ; *Girous v. The State*, 29 Ind. 93 ; *Chapman v. The State*, 18 Ga. 736.) From these authorities and the testimony it appears that

the appellant has no reason to complain of the instruction given by the court upon the question of *idem sonans.*

The next objection which he raises is as to the refusal ot the court to charge the jury that —

" If the jury, or any one of the jury, after consideration of all the evidence in said cause, entertain a reasonable doubt as to whether or not the defendant, S. D. Witt, was present at the time and place of the alleged homicide in the information in this case charged, then it is the duty of the jury to acquit the defendant."

The theory of this instruction is, that if a single member of the jury entertains a reasonable doubt of the defendant's guilt, an acquittal must follow. In such a case there cannot be a conviction, but it is absurd to say that eleven jurors who may be satisfied of the defendant's guilt beyond all doubt, shall sacrifice their honest convictions and agree to an acquittal because the twelfth juror may for some reason oppose a conviction. This is clearly not the law, and the request was properly refused.

*3. Reasonable doubt; no error in refusing instruction.*

Another instruction asked by the defendant, the refusal of which is assigned for error, is as follows :

"If any one of the jury, after having considered all the evidence in this case, and after having consulted with his fellow-jurymen, should entertain a reasonable doubt of the defendant's guilt, or after such consideration and consultation should entertain a reasonable doubt as to whether or not the defendant was present at the time and place of the commission of the alleged homicide, then the jury cannot find the defendant guilty."

It is conceded by counsel for the state that this instruction correctly states the law, and that it was one proper to be given in the case; and the question arises, was its refusal error? In no part of the general charge given by the court is the individual duty and responsibility of each juror stated, or in any way referred to. The jury are instructed as a body, and although the doctrine of reasonable doubt is stated in the general charge, it is addressed to the jury in its collective capacity. Under our system, the verdict must be the concurrent

judgment of all the members of the jury. It is the duty of the juror to consult and consider the views of his fellow-jurors, but ultimately he must act upon his individual judgment, and as stated in the instruction which was refused, if any one of the jury, after having considered all the evidence, and after having consulted with his fellow-jurymen, should entertain a reasonable doubt of the defendant's guilt, they cannot convict. Upon this question we have a case recently decided by the supreme court of Indiana, that is almost exactly in point — *Castle v. The State*, 75 Ind. 146. There, the appellant was indicted for assault with the intent to murder another. The trial court refused to instruct the jury that—

"If any one of the jury, after having considered all the evidence, and after having consulted with his fellow-jurymen, should entertain such reasonable doubt, the jury cannot in such case find the defendant guilty."

It will be noticed that the language of the instruction is almost identical with the one refused in this case. Notwithstanding that the same idea had been stated to the jury as a body in the general charge, the refusal of the special instruction was held by that court to be reversible error. In deciding the case the court said that—

"The law, where a criminal is tried, contemplates the concurrence of twelve minds in the conclusion of guilt before a conviction can be had. Each juror must be satisfied beyond a reasonable doubt of the defendant's guilt before he can under his oath consent to a verdict of guilty. The proposition embodied in the charge asked, that if any one of the jury, after having considered all the evidence, and after having consulted with his fellow-jurymen, entertains such reasonable doubt, the jury cannot in such case find the defendant guilty, is correct in point of law. (See *Clem v. The State*, 42 Ind. 420.) The charge seems to have been in other respects correct, and we are of opinion that it should have been given. Each juror should feel the responsibility resting upon him as a member of the body, and should realize that his own mind must be convinced of the defendant's guilt beyond a reasonable doubt before he can consent to a verdict of guilty. We think, notwithstanding the general charge of the court, the defendant

had the right to have the charge asked given, thus specifically calling the attention of each juror to the duty and responsibility resting upon him, as well as to the legal rights of the defendant."

It is impossible to distinguish that case from the one before us, or to avoid the force of that decision, and we incline to

**4. Duty of each juror; refusal of instruction — error.** follow it. A reversal of the judgment is a necessary result, unless we can say that the error of the court did not prejudicially affect the substantial rights of the defendant. There is a much greater reason for a careful observance of the rights of the defendant in this case than in the one cited. In the case in hand the defendant is charged with willful murder, against which the severest penalty of the law is declared. The testimony upon which the conviction was obtained is wholly circumstantial, and from a careful consideration of the testimony as it is presented to us in the record, the question of the guilt of the defendant appears to us to be a close one, although we would regard the testimony as sufficient to sustain the verdict if there was no error in the proceedings. Yet, after an attentive study of the case, we are unable to say that the erroneous ruling did not operate to the prejudice of the defendant. As there must be a new trial, we forbear making any comment upon the testimony in the case.

Some other objections are made by the defendant, which we regard as without force.

For the error mentioned, the judgment of the district court will be reversed, and the cause remanded for a new trial.

HORTON, C. J.: I do not agree with the fourth subdivision of the syllabus of this case, nor with the language of the opinion supporting the same.

Of course in a criminal case each juror must be satisfied beyond a reasonable doubt of the defendant's guilt, before he can, under his oath, consent to a verdict of guilty, and each juror should feel the responsibility resting upon him as a member of the body; but in this case, I do not think the members of the jury were misled in any manner as to their

32—34 KAS.

individual duty and responsibility.   And I further think that the failure of the trial court to give the special instruction referred to in the fourth subdivision of the syllabus, as to the individual duty and responsibility resting upon each member of the jury, not material error.   On an appeal of a criminal case this court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.   The jury were addressed by the district judge, in the charge, as "gentlemen of the jury," and therefore the instructions were to the jury individually, as well as collectively.   When the district judge, addressing the jury, used the word "you," he spoke to each member of the jury individually, as well as in their collective capacity.

Again, I am inclined to believe that there is no one thing more strongly inculcated in the mind of the average American juror than his right to disagree with every other member of the jury; in other words, as a rule, each juror is self-conscious that a verdict is the expression of the concurrence of individual judgments, and that he is not to set aside or waive his own judgment of the facts, as they are presented to him in the evidence adduced, because some one else of the jury, or even all the other members of the jury, have arrived at a different conclusion.   If the jury in this case had been erroneously directed, as in *The State v. Bybee*, 17 Kas. 462, or as in *Clem v. The State*, 42 Ind. 420, referred to in the case of *Castle v. The State*, 75 Ind. 146, I would unhesitatingly be in favor of reversing the judgment of the trial court.   In both those cases, however, the jury were instructed to yield their individual judgments, and thereby compromise upon a verdict. No such instructions were given in this case as in *The State v. Bybee*, or *Clem v. The State*.   Further than this, in order that the defendant may be satisfied that the verdict rendered against him is the verdict of each individual member of the jury, the statute gives him the right, when the verdict is announced, to have the jury polled, and thereupon each juror is asked if the verdict returned is his (individual) verdict.

If any juror answers in the negative, the jury must again be sent out, for further deliberation.

VALENTINE, J.: I concur in reversing the judgment of the court below in this case. I also concur in the fourth number of the syllabus and the corresponding portions of the opinion delivered by Mr. Justice JOHNSTON. It is admitted that the instruction copied into that clause of the syllabus is sound law, and applicable under the facts of this case. Then why did the court below refuse to give it to the jury, or to give something like it? And is not such a refusal material error? Is the case so unimportant or trivial that the court might have refused all instructions? Or, is the instruction itself so unimportant and trivial as not to merit any consideration? Or, has something occurred that will render the refusal to give the instruction or something like it harmless or immaterial? Is the defendant so clearly guilty that no error of the court in any particular could prejudice his substantial rights. Or, may the jury be presumed to know the law so well that no instructions from the court are or were necessary? These questions cannot all be answered against the defendant. This is not an unimportant or trivial case. The defendant was convicted of murder in the first degree, and was sentenced to imprisonment and hard labor for the term of one year and until the governor shall issue his warrant and fix a time for his death by a legal execution; and this conviction and sentence are not founded upon clear, convincing or conclusive evidence, but are founded purely upon circumstantial evidence, of at least a questionable character. There is at least a possibility, if not a probability, that the defendant is not the person who did the killing, *but that he at the time was many miles away.* The defendant demanded that the foregoing instruction should be given to the jury, but the court refused, and nothing was given that could take its place. In this the court clearly erred, and nothing has occurred to render the error immaterial or harmless; and the defendant has certainly done nothing to waive or forfeit his right to have proper instructions given to

the jury. And there is nothing in the case different from cases in general that shows that each juror in agreeing to the verdict expressed his own individual judgment. The verdict, as is usual and proper, was signed by only one member of the jury as foreman; and it does not appear that the jury were polled; and there is nothing appearing in the case that would indicate that the jury were of more than average intelligence; and generally juries that try murder cases do not possess a very high degree of intelligence. Indeed, in a murder case, the most intelligent men of the county have read so much about it, have talked so much about it, and have formed or expressed so many opinions concerning it, that they are disqualified from trying it, and only the least intelligent, those who do not read, and those who have the least information, are competent to sit as jurors in the case.

That the court below erred must be admitted, and I cannot say that the error is immaterial. See especially the case of *Castle v. The State*, 75 Ind. 146.