LUDWIG J. KARNER, *Appellant,* v. THE KANSAS CITY ELEVATED RAILROAD COMPANY, *Appellee.*

No. 16,576.

1. PRACTICE, DISTRICT COURT—*Admonition to Jury—Duty to Agree.* An admonition to the jury presenting to them in strong language their duty to agree if possible held not to constitute error.

2. ———— *Same.* An oral admonition to the jury, after their deliberations had begun, directing their attention to the instructions regarding the burden of proof and adding, "when you can not decide a matter in favor of the party who has the affirmative, because the weight of the evidence is not that way,

you should decide the other way," held not to be reversible error.

3. JURY AND JURORS — *Misconduct* — *Consideration of Matters Not in Evidence.* Where the speed of a street car was in issue, the fact that one member of the jury told the others during their deliberations that he was a railroad man and knew within what distance a train could be stopped when running at a certain speed, and used that fact in arguing against the plaintiff's right to recover, held not to be ground for reversal.

Appeal from Wyandotte court of common pleas; LEWIS C. TRUE, judge. Opinion filed June 11, 1910. Affirmed.

*Edward C. Little,* for the appellant.

*O. L. Miller, W. J. Buchan,* and *C. A. Miller,* for the appellee; *Samuel Maher,* of counsel.

*Per Curiam:* The plaintiff sued a street-railway company on account of injuries received in a collision, alleging negligence in running at too high a rate of speed. Contributory negligence was relied on as a ground of defense. A verdict was returned for the defendant, and the plaintiff appeals. When the jury had been out a short time the court called them in and urged upon them the desirability of their reaching an agreement. Soon afterward he gave them the same admonition in stronger terms, saying, among other things:

"I think you have failed to read your instructions as much as you should have read them, and learn from them that when you can not decide a matter in favor of the party who has the affirmative, because the weight of the evidence is not that way, you should decide the other way. . . . You can see the necessity for your making some strenuous effort to come to an agreement upon that doctrine that when a party has the affirmative of an issue, if the evidence does not show that party is entitled to recover you must find the other way; find against that party."

It is contended that this language was likely to be,

and in fact was, understood by the jury to mean that if as a body they could not agree that the plaintiff had shown a right to recover, then it was the duty of all to unite in a verdict for the defendant. We do not think the words of the court were fairly open to that construction or that it is probable they were so interpreted. They seem intended merely to emphasize the principle that it is the duty of a juror to find against the party having the affirmative of an issue, unless in his judgment the contention of such party in that respect is supported by a preponderance of the evidence. The occasion for such emphasis does not appear, but as the burden of proof rested upon the plaintiff as to the defendant's negligence, and upon the defendant as to that of the plaintiff, the court may have thought there was likelihood of a misapprehension and so directed especial attention to the written instructions in that regard. A juror made affidavit that he was misled by the language of the court, but of course it was not competent for him to impeach the verdict in this manner.

The court went quite far in seeking to impress upon the jury their duty to agree if possible, but not so far as to constitute coercion or otherwise amount to reversible error. Complaint is made that the first admonition to the jury was given in the absence of, and without notice to, the plaintiff or his attorney. His attorney was present when the language most strongly objected to was used, and his absence on the prior occasion could not have resulted in material prejudice to his client.

A further ground upon which a reversal is asked is that during the deliberation of the jury one of its members told the others "that he had been a railroad man and knew how long it took to stop an engine and train, and how far a train would run in stopping when running at a certain speed, and advanced that fact in his argument to the other jurors as an argument against the plaintiff's right to recover." Just what bearing the

statements of the juror had upon the controverted facts is not shown. Possibly he argued the speed of the street car from the distance within which it was stopped, in the light of his experiences as to the time taken to stop railroad trains. His personal knowledge was not so closely related to the subject under consideration as to justify us in saying that the plaintiff suffered substantial prejudice from its communication to the jury.

Error is also assigned in the giving and refusing of instructions, but the charge as a whole seems fairly to have covered the law of the case, so far as the record discloses.

The judgment is affirmed.

SMITH, J. (dissenting) : The journal entry of the proceedings in this case, after the jury first retired to consider their verdict, is as follows:

"And thereafter, and after the jury had deliberated on their verdict in this cause for several hours, the court on its own motion called the jury into the jury box, and this in absence of counsel for plaintiff, and delivered to them orally the following lecture, or admonition: 'Well, you haven't tried enough; you are to follow the weight of the evidence. We want verdicts from juries, not disagreements and two or three days' more work. Jurors, like courts, must try hard to get the work along. There isn't any good reason in most cases for jurors disagreeing. They should be guided by the weight of the evidence, and I think you will have to stay. Please retire again.' Plaintiff's counsel, not being present, had no opportunity to except.

"Thereupon the jury, under the instruction of the court, retired in charge of the sworn bailiff to consider of their verdict.

"Thereafter, and within about an hour's time, the court again called the jury from their deliberation and delivered orally to them the following further lecture, or admonition: 'Sometimes the court has an unpleasant duty to perform, but I trust that I am willing to perform my duty whether it is pleasant or unpleasant.

I don't think you have a difficult case to decide. I think you have failed to read your instructions as much as you should have read them, and learn from them that when you can not decide a matter in favor of the party who has the affirmative, because the weight of the evidence is not that way, you should decide the other way. There is hardly ever a good excuse for a jury disagreeing. You don't comprehend how much loss it is to the public service, and how much injury to the administration of justice. You sit here a day or two and hear a case, and the court's time is taken and the public expense is incurred, and if you will just go out a few hours and say, "Oh, well, we don't care to agree," why can't another jury do the same thing, and another jury do the same thing, and the court be trying and retrying the same cases, and new cases piling up here? You can see the necessity for your making some strenuous effort to come to an agreement upon that doctrine that when a party has the affirmative of an issue, if the evidence does not show that party is entitled to recover you must find the other way; find against that party. That is not hard to understand. And it is too much loss to the public service to send a jury out a couple of hours or three hours, and then say, "Oh, well, we don't want to agree and we are discharged." Now, I can not discharge you, that is not doing our duty; but I don't care to keep you out there at night when the balance of us go home and quit. If it is any use to let you go out a half hour longer I will do so, and I will wait for you; if not, I will release you until morning and hold you. I want juries, like courts, to make their work fruitful. What do you say about wanting another half hour right now? Leave it to the majority now to return to the jury room now or in the morning.'

"Mr. Fischer: 'We want an exception to the remarks of the court.'

"And thereupon the jury in this cause were directed by the court to retire and consider further of their verdict. Thereupon the jury retired to their jury room, and within ten minutes thereafter they again returned to the court room and announced by their foreman that they had reached a verdict, which verdict was, by the court, ordered read by the clerk of the court, and which verdict is in words and figures following, to wit: 'We,

the jury, find the issues joined herein in favor of the defendant, the Kansas City Elevated Railway Company, and against the plaintiff, Ludwig J. Karner.— J. E. STOTLER, *Foreman.*'

"Thereafter the court made the following order: 'It is therefore by the court considered, ordered and adjudged that the defendant do have and recover of and from the plaintiff the costs of this action, taxed at $75.80.

"And thereafter, and within the time allowed by law, and on the first day of May, 1908, the plaintiff herein filed his motion for a new trial of this cause."

As to the time the jury were out before they were called in the second time to be orally instructed the affidavit of Judge Fischer, one of the attorneys for the plaintiff, states that it was a little more than half a day, and two jurors, Crandall and Bodington, testified that it was at least half a day. The following statement is in the affidavit of each of the two jurors:

"Affiant further remembers that the court gave certain additional instructions to the jury orally, after the jury had deliberated at least half a day; that affiant understood said instructions to mean that if he was unable to get the jurors to agree with him in favor of the plaintiff, it was his duty to agree with them in favor of the defendant; that said additional instructions were not written out and given to the jury, and affiant and the other jurors were obliged to rely upon their recollection as to them; that but for the said additional instructions of the court the affiant would have considered it his duty to stand by his convictions in said case, which were favorable to the plaintiff, and would not have agreed to a verdict for the defendant."

It is said that the so-called lecture to the jury, if applied to the duty of each individual juryman, is not essentially erroneous. The portion most strongly criticized is as follows:

"I think you have failed to read your instructions as much as you should have read them, and learn from them that when you can not decide a matter in favor of the party who has the affirmative, because the weight

of the evidence is not that way, you should decide the other way."

This could not apply to the conclusion to be reached by the individual juror. It applied to the whole jury— to the deciding of the case. One juryman could not decide. The circumstances indicated that the individual jurors had made up their minds and had disagreed. They had been out for at least half a day, and were then called in and urged to come to an agreement; were sent out again, and remained about an hour; were again called in, and then a stronger injunction to agree was urged upon them. There is no reasonable interpretation to be given to this injunction except that if the jury as a whole were unable to agree in favor of the party upon whom rested the burden of proof (which as to the right of recovery was upon the plaintiff) then it was the duty of the whole jury to decide in favor of the other party. Two jurors swear in effect that their judgment was that the plaintiff had established his case, but, after listening to this last lecture, they concluded that it was their duty to agree with the majority, and did so and returned a verdict.

It may be said, and perhaps correctly, that these affidavits are incompetent. If so, they are not needed. The fact remains undisputed that the jury went out and returned within ten minutes, which is evidently as short a time as the verdict could be filled out and signed. There was practically no deliberation after the jury were sent out the third time; but they responded to what they interpreted to be, and what was in fact, the one purpose of the lecture—that the minority should surrender their views to the majority.

Since the majority of the electors elect the members of the legislature, and a majority of each house of the legislature passes the law in that branch, and, if the court which hears a case is composed of more than one judge, a majority of the judges interpret the law, the

writer thinks that the law might well be that some majority of a jury, in a civil action at least, should decide questions of fact.  But so long as it is the law that a verdict of a jury must be the result of the unanimous decision of twelve men, I think it is error for the judge of the court to coerce, or practically to instruct that if they can not unanimously decide either way it is the duty of the minority to yield their convictions and agree to a verdict.

I think the judgment should be reversed and a new trial ordered.