No. 32,148

Tomie Jean Neely, *Appellee*, v. The Travelers Insurance Company, *Appellant*.

(42 P. 2d 957)

Opinion filed April 6, 1935.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe* and *Wayne Coulson,* all of Wichita, for the appellant.

*Benjamin H. Brown* and *A.˙P. Woodard,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one by Tomie Jean Neely, as an insured employee of the Cudahy Packing Company, to recover on a group insurance policy issued to the packing company by the Travelers Insurance Company. The verdict and judgment were for plaintiff, and the insurance company appeals.

Neely was employed by the packing company in 1926, and worked in various departments of the packing company's plant in Wichita. In the course of his employment he suffered an accident resulting in loss of an eye, and he became partially deaf, both ears being affected. In November, 1933, he was working in the hide department. Work in that department is temporary, and on November 3 he was laid off. He had been laid off a number of times before. When laid off, it was necessary that he be reëmployed, and if laid off for more than two weeks, he was required to pass a physical examination.

On November 20, 1933, there was work to be done in the hide department, and Neely reported for duty. He had been passed physically after other layoffs, but the instant examination disclosed he was permanently and totally disabled because, in addition to the

infirmities of sight and hearing, he had leaking heart valves and high blood pressure, and would be subject to apoplexy.

There was no dispute that work in the hide department was temporary. When there was no work, an employee was given a layoff slip. If the employee was dismissed, he was given a discharge slip. The slip given Neely on November 3 was a layoff slip, which read as follows:

"DEPARTMENT RELEASE                    "Date 11-3-33

"Name: T. Neely

"Number 670  Has been this day released from service in hide department.

"State reason fully  Laid off.                    H. CONNORS, *Foreman."*

The foreman testified Neely was not "discharged" when he was "laid off." There was no dispute that after a layoff of two weeks, an employee would not be taken back without a physical examination.

With respect to time when disqualifying disability occurred, Neely testified two ways. He was working when he was laid off. He said that when he returned for work on November 20 he felt as though he was able to do the same work he had always been doing, and there was no doubt about it in his mind. He also said he had been unable to do any work since he was laid off.

The policy contained the following provision:

"The insurance of any employee covered hereunder shall end when his employment with the employer shall end, or prior thereto when the employee shall cease to pay to the employer the required amount to apply toward the premium for this insurance."

The policy also provided that if any employee furnished proof that, while insured, he became wholly disabled by bodily injury or disease, the insurer would waive further payment of premium. Premium on the policy to be paid by the employee was payable weekly. Neely testified money was taken out of his wages every week to pay premiums, and he paid no premiums after November 2, 1933.

The court instructed the jury as follows:

"It is admitted that the policy was issued and that the premiums were paid up until the 2d day of November, 1933. It is also admitted by the plaintiff that after that date he paid no more premiums. If, however, at that time his disability had appeared, then, under the terms of the policy, it was unnecessary to pay any more premiums to keep the policy in effect."

After the jury had deliberated for a day, it was called into court, and the following proceedings occurred:

"THE COURT: Well, Mr. Foreman, have you arrived at a verdict?

"THE FOREMAN: Your Honor, we haven't yet at this time arrived at a verdict.

"THE COURT: What do you think the chances are, Mr. Foreman?

"THE FOREMAN: Well, Your Honor, I can't just say.

"THE COURT: You don't believe it is hopeless?

"THE FOREMAN: Well, I hardly think so. It might be.

"THE COURT: Let me read you another instruction. Now, watch it carefully: 'There is little excuse for a hung jury. It is generally senseless and, too, generally arises out of personal quarrels or differences between the jurors. It is an abomination to any court, an abhorrence to taxpayers, and a reproach upon the members of the jury. It is hoped by the court that you twelve jurors are as intelligent as the next twelve jurors would be. The differences of the jurors are seldom over an issue in the case. They are seldom caused by lack of evidence, but, rather, by a perversity or egotism on the part of some one or more jurors, or by ill-will of some one or more jurors towards a lawyer or a witness in the case. Such jurors forget their oath and the purpose of a jury—justice, not travesty. . . .'"

With a general verdict for plaintiff, the jury returned, among others not now material, the following findings of fact:

"1. When did the plaintiff's employment with the Cudahy Packing Company cease? A. November 20, 1933.

"2. Did the plaintiff pay any premiums on the insurance contract to the defendant company after his employment ceased? A. No.

"3. Did the plaintiff work regularly at the Cudahy Packing Company except for intermittent layoffs on account of lack of work, until the date you found in question No. 1? A. Yes.

"5. Do you find that the plaintiff has become wholly disabled by bodily injury or disesase? A. Yes.

"7. If you answer No. 5 in the affirmative, state when he became totally and permanently disabled. A. November 20, 1933."

A motion to set aside findings 1 and 3 was denied, and a motion for judgment notwithstanding the verdict, was denied.

The instruction given the jury when it was deliberating upon its verdict was insufferably coercive.

In the case of the *State v. Witt*, 34 Kan. 488, 8 Pac. 769, it was held error to refuse to give the following instruction in the general charge.

"If any one of the jury, after having considered all the evidence in this case, and after having consulted with his fellow-jurymen, should entertain a reasonable doubt of the defendant's guilt, or after such consideration and consultation, should entertain a reasonable doubt as to whether or not the defendant was present at the time and place of the commission of the alleged homicide, then the jury cannot find the defendant guilty." (p. 495.)

In the opinion the court said:

"It is conceded by counsel for the state that this instruction correctly states the law, and that it was one proper to be given in the case; and the question arises, was its refusal error? In no part of the general charge given by the court is the individual duty and responsibility of each juror stated, or in any way referred to. The jury are instructed as a body, and although the doctrine of reasonable doubt is stated in the general charge, it is addressed to the jury in its collective capacity. Under our system, the verdict must be the concurrent judgment of all the members of the jury. It is the duty of the juror to consult and consider the views of his fellow jurors, but ultimately he must act upon his individual judgment, and as stated in the instruction which was refused, if any one of the jury, after having considered all the evidence, and after having consulted with his fellow jurymen, should entertain a reasonable doubt of the defendant's guilt, they cannot convict." (p. 495.)

In the case of the *State v. Logan*, 73 Kan. 730, 85 Pac. 798, the syllabus reads:

"An instruction relating to the individual responsibility of each juror in a criminal case which implies that he is to act solely upon his individual judgment, and is silent as to his duty to consult with his fellow jurors, is erroneous."

In the opinion it was said:

"The verdict of a jury is the combined judgment of twelve men who have all heard the same evidence, each one of whom may have received some impression therefrom differing from that of all his fellows, and is not the separate, independent acts of twelve men—that is, twelve independent verdicts. After hearing the evidence and the arguments of counsel thereon, pro and con, in which arguments the evidence is usually sought to be harmonized with the conclusion of the guilt of the defendant by the attorneys for the state and with the conclusion of the innocence of the defendant by the attorneys for the defendant, the jurymen are segregated to permit them to consult and compare views, for the purpose, of course, of coming to a common conclusion that will satisfy the judgment of each juror. If such common conclusion can be arrived at, it should be embodied in a verdict. If it cannot be arrived at, there should be a disagreement." (p. 731.)

The result is, that conscientious disagreement, after the duties of a juror have been observed, is approved.

Turning to the subject of duties of jurors in civil cases, in the case of *C. B. U. P. Rld. Co. v. Andrews*, 41 Kan. 370, 21 Pac. 276, the syllabus reads:

"The refusal of the court to charge the jury in a civil action that each juror must ultimately act upon his individual judgment, where it does not appear that there was any special necessity for such an instruction, or that any prejudice resulted therefrom, is not reversible error." (p. 371.)

In the opinion it was said:

"An instruction was asked directing the jury that while each member was expected to consult' and confer with the others, yet ultimately he must act upon his individual judgment. While this instruction might have been given with propriety, its refusal in this case cannot be regarded as reversible error. The failure to so charge the jury in a criminal case, when requested, has been held a ground of error in *The State v. Witt*, 34 Kan. 488; but the same strictness is not required in civil as in criminal cases, and no showing was made that there was any special necessity for the giving of such instruction in this case, or that any prejudice resulted from the refusal." (p. 381.)

It will be observed the court said the requested instruction might properly have been given as a part of the general charge.

In the case of *Smith v. Cement Co.*, 94 Kan. 501, 146 Pac. 1026, an instruction to be embodied in the general charge relating to the subject of a juror yielding simply because his fellows were of a different view, was refused. It was held the refusal was not error, because there was nothing to show any necessity for the instruction.

There seldom is necessity for stressing the subject of duty and responsibility of an individual juror, in the general charge. It is usually sufficient if the common duty of jurors in considering the case is explained. When disagreement is impending, the subject of divergence of view becomes important.

In the case of *Sibley v. Cotton-mills Co.*, 85 Kan. 256, 116 Pac. 889, the opinion reads:

"When the jury were about to return to their deliberations, after a noon recess, the court made some inquiry, and indulged in observations concerning the importance of an agreement, intimating that the jury might be kept in their room overnight, referring also to the expense of another trial. Objections were made to these remarks. It is not believed to be necessary to insert here a copy of the remarks objected to. While recognizing the importance of allowing the jury independence of action within their rightful sphere, it does not appear that the court invaded their province or went beyond the boundaries of judicial discretion." (p. 263.)

While the extraneous coercive matters appear to have been tactfully communicated to the jury, the instruction was not approved.

In the case of *Karner v. Railroad Company*, 82 Kan. 842, 109 Pac. 676, the court admonished the jury, while it was deliberating, as follows:

"I think you have failed to read your instructions as much as you should have read them, and learn from them that when you cannot decide a matter in favor of the party who has the affirmative, because the weight of the evidence is not that way, you should decide the other way. . . . You can see

the necessity for your making some strenuous effort to come to an agreement upon that doctrine that when a party has the affirmative of an issue, if the evidence does not show that party is entitled to recover, you must find the other way; find against that party." (p. 843.)

It was contended the instruction was likely to be and was misunderstood. In the opinion, which was *per curiam*, this contention was refuted, and it was said:

"The court went quite far in seeking to impress upon the jury their duty to agree if possible, but not so far as to constitute coercion or otherwise amount to reversible error." (p. 484.)

It will be observed the instruction related to duty of the jury to consider and apply a principle of law enunciated in the general instructions.

The foregoing are the only decisions of this court called to its attention, and they are sufficient. None of them justifies the bludgeoning administered to the jurors in this case who were reluctant to agree. None but a juror of exceptional strength of mind and character would dare face the obloquy threatened by the court, if he stood out. The lone juror, or small minority of jurors, possessing courage to obey the juryman's oath and to withstand dragooning, is the bulwark in the jury system against mob verdicts.

Since the judgment must be reversed, the question arises what the order of this court should be.

There are many kinds of group policies negotiated by employers for benefit of employees. Some make provision for what shall be done in case of layoff. The one sued on did not do so, and the policy was not aided by statute relating to continuity of employment in case of layoff for unavoidable cause, similar to the provision found in the workmen's compensation act. (R. S. 44-511, 1 [a]; *Horn v. Elm Branch Coal Company,* 141 Kan. 518, 41 P. 2d 751.) The policy provided insurance should end when employment ended, without distinction between layoff and discharge. The layoff slip which Neely received said he was released from service. The packing company had no work for him to do, he did not work, he received no pay for work, and he was not in fact employed when laying off. He might never be taken back to work, and if there should be work to be done, it was necessary that he be reëmployed. Interpretation of the policy was a matter for the court and not for the jury, and under the policy, Neely's employment ceased on November 3.

Passing the subject of termination of employment, the policy lapsed unless Neely kept up the premium, and he paid no premium after he was laid off. He was relieved of payment of premium if his disability occurred while he was employed. He worked until November 3, and there was no evidence his disability occurred on or previous to that date. The jury found, on his own testimony, his disability occurred on November 20. The result is, that in no aspect of the case could plaintiff recover.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for defendant.