### W. F. JOSEPH, et al., v. FIRST NATIONAL BANK.

1. INDORSERS OF BLANK NOTES; *When Liable.* J. and C. indorse a negotiable promissory note, which, so far as the dates, the amount, etc., are concerned, is in blank, and give said note to L. to be negotiated in a bank in paying and taking up another note for $1,000 then due and held by the bank against J. and L. and a third person, and J. and C. instruct L. to fill up said new note for $400 only; but L. in violation of such instructions, fills it up or allows the bank to do so for $1,000, and then L. with said new note pays and takes up the old one, and the bank is fully aware that said new note was executed and indorsed in blank, but is not aware and has no notice that the note was filled up for a larger amount than was authorized by J. and C.: *Held,* That a promissory note may legally be executed and indorsed in blank, and that upon the facts as above stated, the bank is an innocent and *bona fide* holder of said new note for value, and is not responsible for or chargeable with the wrong committed by L., and may therefore recover against J. and C. the full amount of said note.

2. OBJECTIONS TO EVIDENCE, *Must be Stated.* Where a party objects to the introduction of evidence he must state the grounds of his objections.

3. INSTRUCTIONS, *Not Excepted to, Not Reviewable.* Where a party desires to have an instruction (which is given by the court to the jury) reviewed in the supreme court, he must except to the giving of such instruction.

4. GENUINENESS OF SIGNATURE; *Comparison by Jury.* While juries must always receive and weigh the evidence of the witnesses with regard to the genuineness of a disputed signature of one of the parties to the suit, when such a question is presented to them, yet they may also exercise their own judgment concerning the genuineness of such signature by comparing it with other signatures of the same person already in evidence and known to be genuine.

5. JURY, *After Retiring May Return for Further Instructions.* Where a disagreement arises between the members of a jury after they have

retired for deliberation, they may be returned into court and further instructions given them with reference to the matter about which they disagree, and the court in further instructing them may exercise some discretion as to the extent of its instructions.

6. ———— *Parties to be Present.* It would be error in such a case for the court to give such further instructions in the absence and without notice to the parties or their counsel; but where the record brought to the supreme court "is a case made for the supreme court," and is silent with reference to the presence or absence of the parties and their counsel, it will be presumed that they were all present.

*Error from Butler District Court.*

ACTION upon a promissory note by the *First National Bank of Eldorado,* against D. J. Lobdell as maker, and *W. F. Joseph,* and *Henry Comstock, Jr.,* as indorsers. Lobdell made no defense. *Joseph* and *Comstock* answered, denying their alleged indorsement. Trial at the February Term 1875. Verdict and judgment for plaintiff for $1,210.46. *Joseph* and *Comstock* bring the case here for review.

*A. J. Miller,* and *Martin & Case,* for plaintiffs in error.

*A. L. Reddin,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the First National Bank of Eldorado, Kansas, against the maker and indorsers of the following promissory note:

" $1,000.        ELDORADO, KANSAS, March 21st, 1874.

"Six months after date, for value received, I promise to pay to the order of Waitman F. Joseph, the sum of one thousand dollars, at the First National Bank of Eldorado, in Eldorado, Kansas, with interest from maturity at the rate of 12 per cent. per annum. And I further agree to pay a reasonable attorney-fee if suit shall be instituted to enforce the payment hereof.

"No. 3216.    Due Sept. 21st 1874.    D. J. LOBDELL."

Upon the back of which note was indorsed the names of "WAITMAN F. JOSEPH," and "HENRY COMSTOCK, Jr."

Joseph and Comstock answered separately, each denying under oath that he ever indorsed said promissory note; and

Joseph alleging that so far as he was concerned the indorsement was a forgery. The evidence however, as brought to this court, seems to show, beyond all doubt, that the signatures indorsed on said note were and are the true and genuine signatures of the said Joseph and Comstock. The evidence however seems to show that said note was indorsed before it was fully filled up, and while it was partially in blank, but as to how much of it was filled up, and how much of it was in blank, the evidence with regard thereto is conflicting. Some of the evidence tends to show that the dates, the amount, the maker's name, and the payee's name, were all in blank, while other parts of the evidence tend to show that not so much of the note was in blank. The amount at least was probably in blank. Joseph and Comstock indorsed said note at the request of Lobdell, and both Joseph and Comstock testify that Lobdell agreed that the amount to be put in the note should not exceed $400. But there was other evidence contradicting this, and showing that the note was to be filled up just as it was in fact filled up. This note was executed and indorsed for the purpose of taking up and paying another note for $1,000 then due, and held by the bank against Lobdell and Joseph and a man by the name of Drake; and there was evidence tending to show that Lobdell, who was the principal debtor, and who procured said signatures, told the indorsers at the time they indorsed said note, that if he got certain money which he expected to get, the amount that would be placed in the new note should not exceed $400, and in any case the amount should not exceed $1,000. The note was in fact filled so as to make the amount just $1,000.

1. Indorsement of blank notes. The bank was fully aware that the note was executed and indorsed in blank, but it was not aware until long after it purchased and received the note, and until long after all the blanks were completely filled, that any one claimed or believed that the blanks were not filled up in exact accordance with the expectations and understanding of the indorsers. The note was taken by the bank in good faith as payment for another note of the same

amount which the bank held against said Lobdell and S. D. Drake as makers, and said defendant Joseph as indorser. Now upon the merits of this case we think the plaintiff below should recover. Promissory notes may legally and properly be executed and indorsed in blank. And knowledge on the part of the payee or holder of the note, that it was so executed and indorsed, will not vitiate the note. All that is necessary in such a case is, that the holder shall be an innocent and *bona fide* holder of the note for value. He is not bound to know that the blanks were filled up in exact accordance with the expectations or intentions of the maker or indorser. The maker and indorser take the risk, when they make and indorse the note. The note is good in the hands of an innocent purchaser for value, even if it was filled up with an amount greater than that authorized by the maker or the indorser. (1 Pars. Notes & Bills, 109 to 113; 1 Daniel on Negotiable Instruments, 111, *et seq.*) The plaintiff in this case was an innocent and *bona fide* holder of the note for value. The plaintiff was wholly innocent of any fraud or any wrong that may possibly have been perpetrated on the indorsers. And in consideration for this note the plaintiff gave up and surrendered a valuable security, to-wit, another note for the same amount on Drake, and on two of the present defendants, Lobdell and Joseph. This was a sufficient consideration, even if the same should be called a preëxisting debt. (1 Parsons on Notes, 219; 1 Daniel on Negotiable Instruments, 145, 146, 620 to 623.) Drake was released, and Lobdell and Joseph got further time, and the note was taken and received in the usual and ordinary course of business, and there was nothing to create the slightest suspicion that the note was not filled up as directed by Joseph and Comstock. It would now be unjust to the bank to hold that the note was void; and therefore, upon the merits of the case, we think the bank should recover.

But aside from the merits, are there any technical grounds upon which the judgment of the court below should be reversed? It is claimed that the court below erred in admitting

in evidence a certain letter of Miller & Taylor. Now this evidence does not appear from the record to have been competent. It was the admissions of two men, not parties to the record, and not appearing to have any authority from any party to the record to make such admissions. But still the evidence was immaterial; for everything material which the letter tended to prove had already been incontestibly proved or admitted. But whether the evidence was competent or not, or material or not, the defendants cannot complain of its admission by the court below, for they stated no ground upon which they asked to have it excluded. (*Simpson v. Kimberlin*, 12 Kas. 587; 3 Estee's Pl. & Forms, 500; 3 Wait's Pr. 204, 205.) If the ground for the objection was, that Miller & Taylor did not have authority from either of the defendants for writing said letter, and if such ground had been suggested to the court below, then other and additional evidence might have been introduced showing that Miller & Taylor did have just such authority. This may not however have been the real ground upon which said objection was made. The objection, so far as the record shows, may have been made on the ground that Miller & Taylor did not write the letter, or that the statements therein contained were in and of themselves irrelevant or incompetent; or it may have been on some other supposable ground. Miller & Taylor were attorneys for the defendants. It is claimed that the court below erred in excluding evidence " as to what was said by Miller & Taylor with reference to the note in question." There was certainly no error in this.

The first, second and third instructions of the court to the jury were not excepted to, and hence we cannot review them. (*Wyandotte v. Noble*, 8 Kas. 444, 447; *Norton v. Foster*, 12 Kas. 45; *Wheeler v. Joy*, 15 Kas. 389, 390.) There is no question raised in this court concerning the fourth, fifth, seventh, eighth and ninth instructions. Or at least, they are not mentioned in the briefs of the plaintiffs in error, defendants below.

The sixth instruction is not erroneous. While juries must

*2. Objections to evidence must be stated.*

*3. Excepting to instructions.*

always receive and weigh the evidence of the witnesses with regard to the genuineness of a disputed signature of one of the parties to the suit, when such a question is presented to them, yet they may also exercise their own judgment concerning the genuineness of such signature by comparing it with other signatures of the same person already in evidence and known to be genuine. (*Macomber v. Scott*, 10 Kas. 336.)

*4. Jury may compare signatures.*

After the jury retired for deliberation a disagreement arose between them, and they were properly returned into court, when the court gave them other and further instructions. Now there is nothing wrong in this in and of itself. (Gen. Stat. 683, § 280.) But it is claimed that the court did not confine itself as strictly as it should have done to the matter in dispute between the members of the jury. We think it did. The court however must in such a case be allowed a little latitude, and be allowed to exercise a little discretion. But it is claimed that the court at this time erred in instructing the jury as follows: "If it is proved to your satisfaction, that the signatures on the back of the note are genuine, the variance between Gossard and Rix is immaterial." The variance referred to related simply to how much of the note was in blank at the time when it was brought to the bank for negotiation; and we think the variance was wholly immaterial. It was wholly immaterial, with respect to this question, whether Gossard or Rix was correct, or whether either was strictly correct. This subject has already been sufficiently discussed in this opinion. The said instruction was not erroneous, and we do not think that any of the other instructions given at this time were erroneous. · Besides, none of these instructions were excepted to, and no objection was made to their being given. But it is claimed that the record does not show that the defendants or their counsel were present at the time these instructions were given, and does not show that any notice was given to them. Now if in fact they were not present, and had no notice given

*5. Jury may return and ask further instructions.*

*6. Parties to be notified when jury return.*

to them, then they would undoubtedly have the right to have said instructions reviewed without an exception. It would be error for the court to give instructions under such circumstances until after the parties or their counsel first had notice. (Gen. Stat. 683, § 280.) But the record does not show that the defendants and their counsel were absent and that they had no notice. From anything appearing in the record, the defendants and their counsel may have had ample notice, and may have been present at the time the instructions were given. The record is merely silent upon the subject. Now the defendants themselves brought the record to this court, and instead of bringing the entire and complete record, they brought only what is termed "a case made for the supreme court." Now such a "case made" seldom or never contains all the proceedings of the court below in a case, but contains only so much of such proceedings as is thought necessary to present the errors complained of. (Gen. Stat. 737, § 547.) And it always devolves upon the plaintiff in error, the party complaining, the party who makes the case, to see that enough is put into his "case made" to show affirmatively the errors of which he complains. Error is never presumed from mere silence in a record, and certainly not in favor of a plaintiff in error whose record is merely a "case made." If the defendants were not present, and had no notice when said instructions were given, they should have made their "case made" show that fact affirmatively.

It is also claimed that the verdict is not sustained by sufficient evidence. We think it is; and besides, the record does not show affirmatively that all the evidence has been brought to this court.

The judgment of the court below must be affirmed.

All the Justices concurring.