No. 20,887.

THE FIRST NATIONAL BANK OF HAYS CITY, *Appellant*, v. A. P. STAAB and JACOB P. STAAB, *Appellees*.

SYLLABUS BY THE COURT.

1. REPLEVIN—*Chattel Mortgage—Pleadings.* An instruction covering fraud and mutual mistake, not pleaded, held improper.

2. PROMISSORY NOTE—*Variance by Parol.* Rule followed that the terms of a plain promissory note cannot be varied by parol.

3. REPLEVIN—*Value of Property—Replevin Affidavit Competent Evidence.* The affidavit in replevin made by the plaintiff was properly permitted to go to the jury on the question of value of the property involved.

4. SAME—*Mortgagee "Deeming Itself Insecure"—Conclusive.* Proof of a feeling of insecurity was sufficient to support the plaintiff's allegation that it deemed itself insecure, the reasonableness of such feeling being immaterial.

Appeal from Ellis district court; JACOB C. RUPPENTHAL, judge. Opinion filed February 9, 1918. Reversed.

24—Kan.—1778

*C. M. Holmquist, A. D. Gilkeson,* both of Hays, *Lee Monroe, James A. McClure,* and *C. M. Monroe,* all of Topeka, for the appellant.

*E. A. Rea,* and *J. P. Shutts,* both of Hays, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff bank loaned Jacob Staab $175.25, taking his note payable on demand, which note his father was to have signed, but did not, secured by a chattel mortgage on some wheat and other property already mortgaged to the bank by the defendants to secure indebtedness which had been running and accumulating for a number of years. The bank brought replevin, and in its affidavit fixed the value of the wheat at $3,000 and the other property at $1,730. No redelivery bond was given. The bank sold the wheat for $600 and the other property for $971.50. The defendants pleaded an oral agreement on the part of plaintiff's cashier when the note of Jacob Staab was given, that no action would be taken on the chattel mortgage until the wheat was thrashed and marketed, and prayed judgment for a return of the property or the sum of $4,500 and costs. The defendants recovered a judgment for $3,900, and the plaintiff appeals, assigning as errors the admission of evidence as to the alleged agreement and certain other rulings touching evidence and instructions.

The principal complaint is that the alleged parol agreement contradicted the terms of the note given by Jacob Staab. The latter testified that when he gave this demand note he thought it was the same as any other and would "give a man time, thirty days or ninety days." That he understood from the cashier from what he said that he was to pay after the wheat was thrashed and marketed, and that he would not have signed these notes and chattel mortgage if he had known that the bank would demand payment within thirty days and before the wheat was thrashed and marketed. On cross-examination he testified that the note was not to be paid until after harvest.

"Q. Who told you that? A. Mr. Madden.

"Q. What did he say? Give us his exact language. A. Now, he says, I want you to straighten out these notes this fall. I says I will just as soon as I thresh. I says I can't pay them before that.

"Q. And that is what he said? A. Yes.

"Q. He didn't say he would not try to collect them before that, he had any particular time?   A. No, he never said that."

The court instructed that—

"Evidence has been presented as to the agreement regarding the maturity of the note given by Jacob P. Staab and of the alleged extension of his father's note until threshing or marketing time. . .  If, at the time that the defendant, Jacob P. Staab, signed the notes in controversy, he and the bank made an agreement to the effect that payment thereon was not to be made nor demanded until after the wheat of the defendant was threshed and marketed, and if it was understood and agreed at such time between said defendant and the bank that said notes should not mature nor be due and payable until after threshing and marketing the wheat, such agreement, if any, would be binding upon the plaintiff as well as the defendant, even though the note taken provided that it was due and payable 'on demand,' provided that by reason either of accident or mutual mistake of both parties, or of fraud on the part of the bank, the note did not express the contract or agreement of the parties in relation to the maturity of said note."

We are compelled to hold that this instruction not only went beyond the allegations of the answer, which did not allege any fraud or mutual mistake, and the evidence, which in no wise indicated either, but also went counter to the rule that the plain terms of a promissory note cannot be varied by oral testimony.   This rule is clearly set forth in *Stevens v. Inch*, 98 Kan. 306, 158 Pac. 43, and *Bank v. Paper Co.*, 98 Kan. 350, 158 Pac. 44.   It is but fair, however, to say that both of these decisions were rendered after the trial of this action.

It is complained that the affidavit was permitted to go to the jury on the question of the value of the property.   The court refused an instruction that it should not be considered, and charged that, while not an absolute test of the value and while made only for the purpose of fairly approximating the value in fixing the amount of bond to be given, it might be considered so far as it threw light upon the question of a feeling of insecurity.   There was no error in this of which the plaintiff can complain, for the court might have gone further and charged that the affidavit might be considered touching the question of value and the plaintiff's estimate thereof.   (*Crawford v. Furlong*, 21 Kan. 698; *Hoisington v. Armstrong*, 22 Kan. 110; *Mills v. Mills*, 39 Kan. 455, 18 Pac. 521; 34 Cyc. 1605.)

On the question as to whether the bank actually deemed itself insecure, the jury were correctly charged that if when the property was taken the cashier took possession with the conviction of insecurity in his mind, that was sufficient. The cashier not only testified to this feeling of insecurity but gave cogent reasons therefor. It is complained that there was no evidence to the contrary, and that the jury were erroneously permitted to pass on the question. The court instructed that as the cashier had testified that he had such feeling at the time—

"Then upon the facts of the case if you think it is at all fairly and reasonably possible to believe that he had such feeling, then you should so find, and it should be held that the bank had a right to take possession of the property."

There is nothing on the face of the record to impugn his credibility in the slightest, except the matter of value fixed in the affidavit, but this particular part of the charge is not complained of.

One of the provisions of the mortgage was that possession might be taken if the bank should deem itself insecure. It was alleged that it did so deem itself. The answer contained a general denial. It was proper, therefore, to permit proof as to such alleged feeling of insecurity—the reasonableness thereof being entirely immaterial.

The judgment is reversed, and the cause remanded for further proceedings.