No. 25,146.

THE FIRST NATIONAL BANK OF HOISINGTON, *Appellee*, v. R. A. GREATHOUSE, *Appellant*.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Assigned by an Innocent Holder—Assignee's Knowledge of Infirmities—Note Free from All Infirmities*. Rule followed that when a negotiable promissory note has been indorsed and transferred in due course to an innocent holder, an assignee under him takes it free of all infirmities, although such assignee may know of infirmities which originally inhered in it.

2. SAME—A plaintiff in possession of a negotiable promissory note which has once passed through the hands of an innocent holder can maintain an action on it whether his possession is by virtue of ownership or merely for the purpose of collection.

3. SAME—*Instructed Verdict for Plaintiff Proper*. Under the facts narrated in the opinion, an instructed verdict in favor of plaintiff was proper.

Appeal from Finney district court; CHARLES E. VANCE, judge. Opinion filed December 8, 1923. Affirmed.

*Edgar Foster,* and *H. O. Trinkle,* both of Garden City, for the appellant.

*Carl Van Riper,* of Dodge City, and *R. C. Russell,* of Great Bend, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action on the following negotiable promissory note:

"$250.00.                                    .            MARCH 3, 1921.

"Six months after date, I promise to pay to the order of Producers Consolidated Oil Co. Two Hundred Fifty Dollars at Peoples State Bank; value received, with interest at 8 per cent per annum.

(Signed)    "R. A. GREATHOUSE."

[Revenue stamps attached.]

Indorsed: "THE PRODUCERS CONSOLIDATED OIL CO.    ·

"R. R. SIBLEY, Pres."

The plaintiff alleged that before maturity one M. C. Elmore had acquired it in due course from the payee, and that Elmore had sold, assigned and delivered it to plaintiff. Plaintiff also alleged ownership and that no part of it had been paid.

The defenses pleaded were no consideration, and that it was executed and delivered to payee's agents for a coupon book entitling defendant to a certain quantity of oil and gasoline at a filling station to be erected in Garden City but which was never built; that the payee had become bankrupt, and that the payee's agents agreed with plaintiff at the time the note was executed and delivered that if the oil station was not completed the note should be returned to the defendant. The answer further alleged:

"That said oil company through its officers and agents violated its said agreement with this defendant by negotiating said note, and in breach of faith with this defendant indorsed said note over to the plaintiff herein, all of which the plaintiff herein well knew when it took and received the said note from the said oil company. . . . That said plaintiff took the said note from the said oil company for the purpose of aiding and assisting the said company and its officers in defrauding this defendant out of the amount of said note, and defendant alleges that said plaintiff is not an innocent holder of said note in due course."

The evidence clearly showed without dispute that shortly after the note was delivered and long before it was due it was negotiated to one M. C. Elmore, from whom the plaintiff acquired it. There was no evidence tending to question the regularity of the note's ne-

National Bank v. Greathouse.

gotiation in due course to Elmore. Therefore all defenses were cut off when the note became the property of Elmore. (*Bank v. Myrick*, 108 Kan. 191, 194 Pac. 648; *Thresher Co. v. West*, 108 Kan. 875, 196 Pac. 1061.) There was a good deal of plausible evidence tending to show that the note was not regularly negotiated and transferred by Elmore to the plaintiff, if that would bar recovery; but once the note had passed into the hands of Elmore in due course, it became unimportant into whose hands it fell thereafter; and whether such later holders knew or did not know of any infirmities in it, the maker was bound to pay; and he must look to the original wrongdoer for redress, however unsatisfactory or inadequate that may be. The case of *Bank v. Kinnett*, 113 Kan. 360, 214 Pac. 776, is cited to show that a party in possession of a note cannot be a holder in due course unless it has been indorsed to him. Conceding that the cited case goes that far, it does not affect the rights of plaintiff, since it acquired it from a holder in due course. In *Underwood v. Fosha*, 96 Kan. 240, 245, 150 Pac. 571, it was said:

"It is the law that where commercial paper passes through the hands of an innocent holder, the assignee under him takes it free of all infirmities although he may himself be fully apprised of them. (Negotiable-instruments act, § 65, Gen. Stat. 1909, § 5311; 1 Daniel on Negotiable Instruments, 6th ed., § 803.)"

Appellant also argues, "We think the evidence tends to show that the appellee did not purchase this note at all from the said M. C. Elmore." There was no issue on the question of ownership. Indeed the answer admitted the bank's ownership, alleging that it took it with notice of its infirmities. But even if the bank was not the beneficial owner, it could maintain an action to recover, since it was in possession of the note and no issue of ownership was raised as in *Bank v. Amend*, 107 Kan. 25, 190 Pac. 739; id. 112 Kan. 515, 212 Pac. 116. Once a negotiable instrument has been set afloat in the channels of trade in due course, the maker is absolutely liable thereon, and it is immaterial to him to whom he is required to pay, so long as in paying he extinguishes his indebtedness evidenced by the note. (Gen. Stat. 1915, §§ 6578, 6585; *Hardy v. National Bank*, 56 Kan. 493, syl. ¶ 2, and citations, 43 Pac. 1125; Note in 50 L. R. A., n. s., 75 *et seq.*; 8 C. J. 466.)

It follows that an instructed verdict was proper and the judgment must be affirmed.

Hopkins, J., not sitting.