No. 25,077.

THE STATE BANK OF KANSAS CITY, *Appellant,* v. B. HARFORD et al., doing business under the firm name of HARFORD BROTHERS, *Appellees.*

SYLLABUS BY THE COURT.

1. BANK DRAFT—*Unfilled Blanks—Implied Authority to Fill Blanks—Transferred to Innocent Holder—Draft Enforceable.* A draft in which certain blanks are unfilled, upon which an acceptance was duly signed by the drawees, gives implied authority to the person to whom it was delivered to fill out the blanks, and when the instrument is completed and is afterwards transferred before maturity for value to an innocent holder, it is enforceable against the drawees.

2. SAME—*Instrument Imports Consideration — Fraud No Defense When Transferred to Innocent Holder.* Such an instrument imports a consideration, and fraudulent representations of the drawer in procuring it is no defense as against a holder in due course who acquired it without notice of the fraud.

3. SAME—*Evidence—Plaintiff Holder in Due Course.* The evidence examined, and it is held to establish that the plaintiff was a holder in due course, who acquired the instrument before maturity for value and without notice that the acceptance was procured by fraud.

Appeal from Mitchell district court; WILLIAM R. MITCHELL, judge. Opinion filed June 7, 1924. Reversed.

*R. W. Turner, R. B. Turner,* and *D. F. Stanley,* all of Mankato, for the appellant; *Omar E. Robinson,* of Kansas City, Mo., of counsel.

*R. M. Anderson,* and *W. C. Perry,* both of Beloit, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the State Bank of Kansas City against the firm of Harford Brothers on what is called a trade acceptance. Verdict and judgment were in favor of the defendants, and plaintiff appeals.

The following is a copy of the obligation upon which the action was brought:

"$250.00                                    Mch. 24, 1921.

"Sixty days from date hereof, pay to the order of The Producers Consolidated Oil Company, two hundred fifty and no/100 dollars ($250.00) at the office of Union Nat. Bank, Beloit, Kan., for petroleum products sold to drawee. With interest hereon at the rate of 8 per cent from date.

THE PRODUCERS CONSOLIDATED OIL COMPANY.

(Canceled I. R. Stamps 6¢.)                By R. R. SIBLEY, *Pres."*

(Indorsed on back: The Producers Consolidated Oil Co., R. R. Sibley, Pres.)

The acceptance was written across the face of the instrument in red ink as follows:

"Accepted Mch. 24, 1921. This obligation arises out of the actual purchase of goods from the drawer.                HARFORD BROS.

By B. HARFORD."

It appears that the Producers Consolidated Oil Company contemplated the building of an oil-filling station, and called on the defendants and a number of others in the vicinity of Beloit who were users of petroleum products, and proposed to sell to them limited quantities of oil and gasoline at one-half of the market price. A number of them, among whom were the defendants, signed agreements in the form of purchase orders. In one of these the defendants agreed to purchase $500 worth of petroleum products through the proposed filling station for $250, which stated that what was designated as a merchandise order receipt would be issued, and it was agreed that if the station should not be built the money would be returned to the purchaser. It contained a stipulation that the purchase order and the merchandise order receipt constitute the entire agreement with the defendants and was not binding until accepted by an officer of the company. Later Tennant, the agent of the oil company, presented the writing on which the action was brought, with the blanks on the written instrument unfilled, and procured the defendants to sign the acceptance written across the face of the instrument. There was testimony that the agent of the oil company represented that no money was to be paid until certain coupon books were delivered to them, which were to be used in keeping a record of the petroleum products sold and delivered to them from time to time. Testimony was given to the effect that when the acceptance was presented defendants were told by the agent that it was a receipt—a promise to

take the oil when it was furnished to them. The defendants alleged that the agent represented that the paper on which the acceptance was written was not negotiable, and would not be delivered to the oil company until the station was completed and the oil products delivered to the purchaser. They testified that they relied on these statements and also the representation alleged to have been made that the company had $14,000 deposited in the bank to pay for a filling station, which would be completed within six weeks.

It appears that the defendants had contracted with the oil company to construct the filling station, but before it was completed the oil company became insolvent and its assets were subsequently sold to another company in a bankruptcy proceeding. It further appears that the trade acceptance was transferred by the oil company to the plaintiff on March 25, 1921, the day after it was executed, and the trial court instructed the jury that under the undisputed evidence the plaintiff became the holder of the instrument before it was overdue and that it had paid value for it.

The jury found, in answer to questions, that the trade acceptance in question was obtained by false and fraudulent representations in that it was represented that the oil company had on deposit $14,000 in a Beloit bank to erect and equip a filling station, that it would be completed in six weeks, and that the instrument signed was not a note nor trade acceptance and that the blanks in it would not be filled; that it was only to serve as a receipt from the defendants to the agent; that they would accept petroleum products when the filling station was ready for operation; that the instrument was changed by filling up blanks without defendants' consent, and that the plaintiff, to whom the trade acceptance was transferred, had actual knowledge of the changes so made at the time it acquired the paper; that such actual knowledge was obtained from the instrument itself—that is, by difference in handwriting, difference in color of ink and irregular way of filling in blanks. To the question whether the acceptance was acquired in bad faith, it was stated that the bank did not acquire it, but that it had been placed there for collateral or collection, and further that no value for the trade acceptance was paid, but it was deposited to advance credit.

Defendants defended on the grounds that there was a failure of consideration, that the acceptance was procured by fraud, that the instrument had been materially altered, and that plaintiff was not a holder in due course. In the form it was presented to the plaintiff,

the instrument was negotiable and imported a consideration. There is little room for contention as to consideration, as there was an express and unconditional promise to pay for goods purchased, and if the acceptance was otherwise valid there was sufficient consideration to support it, and especially should it be deemed an adequate consideration when it reached the hands of a *bona fide* holder. The principal attack on the paper is that it was procured by fraud. This, it is contended, was established by a showing that the agent of the oil company represented that the company had $14,000 in the bank available to erect the filling station. There is a lack of testimony that such a representation was made to the defendants, but evidence was introduced that such statements had been made to other parties who gave like acceptances. Such evidence can hardly be regarded as proof of a misrepresentation to the defendants in the transaction with them; but even if it were treated as competent evidence, it would not defeat a recovery if the instrument was acquired by the plaintiff in good faith and was a holder in due course. The dishonesty or fraud of the agent of the oil company in procuring the instrument is not a defense as against an innocent holder who acquired it before maturity for value. (*Bank v. Fowler,* 113 Kan. 440, 215 Pac. 290.) Of course if the paper was transferred to plaintiff in bad faith a different rule would apply; but, as the court advised the jury, the bad faith that would constitute a defense was that of the transferee, and that the good or bad faith of the transferor was immaterial. As already shown, the jury found that the plaintiff had actual knowledge of the false representations made by the agent of the oil company in procuring the acceptance, but there was no basis in the evidence for such a finding. In reply to the question, how such knowledge was obtained by the plaintiff, the answer of the jury was: "From the instrument itself, difference in handwriting, difference in color of inks and irregular way of filling blanks." This answer also covered a further question previously asked as to the actual knowledge of plaintiff that the blanks in the instrument had been filled without defendants' consent, and obviously applied particularly to the matter of alteration. The instrument itself imported nothing approaching notice of fraudulent representations made by the oil company in procuring its execution by the defendants. In regard to the so-called alteration of the instrument, it appears to have been an instance of completion instead of alteration. It may be assumed that the blanks were

unfilled when the acceptance was signed by defendants, but it was in the form of commercial paper, a potential negotiable instrument, and under the statute carried with it *prima facie* authority to the drawers to complete it by filling the blanks therein. The negotiable-instrument law provides:

"Where the instrument is wanting in any material particular, the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein; and a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a *prima facie* authority to fill it up as such for any amount. In order, however, that any such instrument, when completed, may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time." (R. S. 52-214.)

The distinction between the alteration and completion of an instrument is pointed out in *Bank v. Wangerin,* 65 Kan. 423, 70 Pac. 330, where it was said, in substance, that where a negotiable instrument is delivered to a payee complete in all of its parts, the maker is not liable thereon to an innocent holder after the same shall have been fraudulently altered so as to express a larger amount than was written in at the time of its execution; but where the paper is incomplete in form, having blanks which palpably invite addition or change, the maker will be held to have empowered the payee to fill such blanks as his agent, and when the instrument so changed is found in the hands of an innocent holder it should be enforced against the maker. The paper was transferred to plaintiff with blanks filled and complete in form, and we discover nothing in the evidence to arouse a suspicion that the plaintiff had any knowledge that the blanks had been filled even after the acceptance was executed. In answer to a question, "Did the plaintiff at the time it acquired the instrument in question have actual knowledge that blanks had been filled without defendants' consent?" the answer was, "Don't know." This answer amounts to a finding that the plaintiff did not have such knowledge, or rather that the evidence failed to show that it had such knowledge. (*Morrow et al. v. Comm'rs of Saline Co.,* 21 Kan. 484, 504; *Hinze v. City of Iola,* 92 Kan. 779, 142 Pac. 947.) So while the jury say that knowledge was obtained by the handwriting, color of ink and irregular way of

filling blanks, they in effect found that the evidence failed to show that plaintiff had knowledge that the blanks were filled as contended. Nor did the evidence tend to prove anything exceptional in the form of the instrument or the ink with which the blanks were filled. When defendants signed the instrument, which had the attributes of negotiability, in which were obvious blanks to be filled in order to make it complete, they gave implied authority to fill the blanks, and a *bona fide* holder without notice is entitled to recover on the completed instrument although the one filling the blanks exceeded his authority in doing so. The controlling principle is, if anyone is to suffer loss through the abuse of confidence, it should be the drawers who negligently permitted the instrument to be put into circulation, rather than a holder innocent of the wrong, who acquired it before maturity for value. (*Joseph v. National Bank,* 17 Kan. 256, 8 C. J. 730.)

The claim of bad faith on the part of the plaintiff was not found by the jury. To the question, "Did the plaintiff acquire the trade acceptance in bad faith?" the jury answered, "Did not acquire, was placed in bank for collateral or collection." The answer was not responsive to the question, and manifestly the jury were unwilling or unable to find evidence to uphold the charge of bad faith, and so it suggested another theory that plaintiff had not acquired the instrument. The finding was made without evidence and against the instruction of the court that under the undisputed evidence the plaintiff acquired the instrument before maturity and for value.

Our conclusion is that the evidence entirely failed to establish a defense on any ground that would relieve the defendants from liability on the instrument, and the motion made by plaintiff at the close of the testimony for the direction of a verdict in its favor should have been sustained. The judgment will be reversed and the cause remanded with the direction to enter judgment in favor of the plaintiff.