### No. 25,813.

### J. B. BRAY, *Appellee*, v. HENRY WETZEL, *Appellant*.

#### SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Trade Acceptance Transferred to Bona Fide Holder.* The rulings in *National Bank v. Greathouse,* 114 Kan. 903, 220 Pac. 1053; *State Bank v. Harford Bros.,* 116 Kan. 262, 226 Pac. 750, and *State Bank v. Grennan,* 116 Kan. 442, 227 Pac. 530, followed and applied.

2. SAME—*Bona Fide Holder—Evidence.* A recovery upon an acceptance regular in form which was indorsed and transferred before maturity to another for full consideration, and where the only direct evidence was to the effect .that the transferee had no notice or knowledge of defects or infirmity, nor of an agreement that the paper should not be indorsed or transferred except upon a certain contingency, is not defeated by testimony to the effect that the party to whom the acceptance was given had requested that it should be presented to that party for payment five days before the maturity of the paper. This arrangement was not substantial evidence of bad faith in the holder which required the submission of the case to the jury.

Appeal from Edwards district court; ROSCOE H. WILSON, judge. Opinion filed April 11, 1925. Affirmed.

*Carl Van Riper,* of Dodge City, and *W. E. Broadie,* of Kinsley, for the appellant.

*A. L. Moffat,* of Kinsley, for the appellee.

The opinion of the court was delivered by

.JOHNSTON, C. J.: This is an action on a trade acceptance for $250. The Producers Consolidated Oil Company was engaged in building a chain of stations through Missouri and Kansas, and undertook the construction of one at Kinsley. The company contracted with Henry Wetzel to sell him, as well as numerous other persons, coupon books by which he was to receive $500 worth of oil for $250. The company began the erection of the station in 1921

and completed it about the latter part of July, but it was never operated, because on July 21, 1921, the oil company was adjudicated a bankrupt and ceased to do business from that time on. Under the contract, and in payment for the coupon books, the defendant executed the instrument upon which this action is brought. There was testimony that an agreement was made at the time the instrument was delivered by which the oil company agreed that it would be placed with a banker in Kinsley and left there until the filling station was completed and in operation, that the instrument would not be negotiated or sold before that time, and that in the event the filling station should not be put in operation the instrument would be returned to the maker. It is admitted that the defendant has never received any of the merchandise for which the acceptance was given. The oil company indorsed and transferred a large number of acceptances, and on May 17, 1921, J. B. Bray purchased $10,000 face value of the acceptances through the Pioneer Trust Company, including the acceptance in controversy, at a discount of $500, paying $9,500 for the whole. When the instruments were first negotiated the oil company requested the trust company to present the acceptances to it five days before maturity for payment. Bray left the acceptances with the trust company for collection and part of them were collected, but before all were collected the oil company became bankrupt and this action was brought to obtain payment from the defendant.

The testimony showed that Bray had no notice of any agreement that the acceptances were not to be negotiated before the filling station was completed, nor that they were to be returned to the defendant if it was not built and put in operation, and had no knowledge of agreements outside of what was shown on the face of the instruments. Testimony was received as to these agreements and of the arrangement between the trust company and the oil company for the presentation of the paper to the latter five days before maturity. The court, after hearing the evidence, directed a verdict in favor of the plaintiff, and the only question presented on this appeal is whether the evidence required the submission of the case to the jury.

Defendant contends that no consideration was received for the acceptance, and further, that there was a breach of faith in negotiating the paper when it was agreed that it should not be negotiated until the station was built and in operation. So far as the mat-

ter of consideration is concerned, that question is foreclosed by the decisions in like cases. (*National Bank v. Greathouse,* 114 Kan. 903, 220 Pac. 1053; *State Bank v. Harford Bros.,* 116 Kan. 262, 226 Pac. 750; *State Bank v. Grennan,* 116 Kan. 442, 227 Pac. 530.) The promise not to negotiate the instruments for a certain time and only on a certain contingency, is inconsistent with the terms of the instrument. It was in the usual form of commercial paper, imported a consideration, and being negotiable in form it carried with it the right to transfer by indorsement. It was transferred by an unqualified indorsement. The contemporaneous agreement not to transfer it, and that it should not be payable if the filling station was not completed, was entirely inconsistent with the terms of the instrument, and the rule is that negotiable paper in the hands of a holder in due course cannot be contradicted or defeated by a side agreement that it should not be indorsed, assigned or presented for payment. (*Stevens v. Inch,* 98 Kan. 306, 158 Pac. 43; *Bank v. Staab,* 102 Kan. 369, 171 Pac. 2; *Buser v. Everly,* 115 Kan. 674, 224 Pac. 66.)

Assuming, without deciding, that the evidence of the agreement was admissible and that fraud in the inception of the note was shown, we are of opinion that there was no material evidence that the plaintiff had any knowledge of the promises made by the agent who procured the instrument from defendant. Upon the theory that the evidence was such as to cast the burden on the plaintiff to show that he acquired the paper in good faith and without notice of defect, we will examine the circumstance relating to the arrangement with the trust company to first present the paper to the oil company for payment. The plaintiff testified without dispute that he paid value for the paper and that he had no notice or knowledge of the contemporaneous agreement, no notice of any defect in the title, or that it was put in circulation in violation of an agreement. There was no testimony in contradiction of his evidence, nor was any attempt made to disprove any of his statements or to show knowledge of the transactions in the making and delivery of the instrument. It was also shown without dispute that the officer of the trust company through whom it was obtained had no notice of defects in the title. It was purchased and transferred before maturity when the oil company was a going concern.

Attention is called to the circumstance that the trust company who held the acceptance for collection had agreed to present them

to the oil company for payment five days before maturity, and that some of them were collected in that way. This arrangement, we think, did not indicate infirmity or defects nor tend to impeach the good faith of the transfer. The statute is that—

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (R. S. 52-506.)

The arrangement was manifestly one of convenience made to facilitate the business of the oil company. It was then a going concern and evidently did not wish to embarrass its patrons with actions to enforce payment of these obligations, and preferred they should be presented to it five days before their maturity. The acceptances were regular in form, the indorsements were not restricted, the transfers were made for full consideration, and they had been delivered by the acceptors and were put in circulation. The fact that the company was willing to take them up did not, we think, cast any suspicion on the validity of the transfer or warrant an inference that the plaintiff had actual knowledge of an infirmity or defect or tend to impeach the good faith of the purchaser.

We think there was no substantial testimony to submit to the jury as to the validity of the transfer, and therefore the judgment of the trial court must be affirmed.