No. 26,480.

E. H. Howard, *Appellee*, v. E. W. Reiter, *Appellant*.

SYLLABUS BY THE COURT.

1. Bills and Notes — *Actions — Proper Parties Plaintiff — Substitution.* The facts attendant on the substitution of one plaintiff for another considered and held that no error nor anything to the prejudice of defendant occurred in permitting such substitution.

2. Same—*Rights and Liabilities on Transfer—Bona Fide Holder.* In an action on a negotiable trade acceptance, the record examined, and the objections to the judgment in plaintiff's behalf considered and not sustained.

Appeal from Mitchell district court; William R. Mitchell, judge. Opinion filed February 6, 1926. Affirmed.

*C. A. Walsh, Jr.,* of Beloit, *A. E. Crane,* of Topeka, and *W. T. Roche,* of Clay Center, for the appellant.

*R. W. Turner, D. F. Stanley* and *R. B. Turner,* all of Mankato, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action on a trade acceptance executed by defendant in favor of an oil company which had promised to build a filling station in Beloit and had promised other advantages to defendant. These promises of the oil company were not kept, but the trade acceptance was negotiated before maturity to the Mitchell County State Bank. When the trade acceptance fell due, defendant declined to pay and this action followed. It chanced that after purchasing the instrument, the Mitchell County State Bank and another bank in the same town were consolidated, and the combined capital reduced to conform with the choicest assets of the two corporations, and the other assets, including this trade acceptance, were informally held to one side and not treated as regular items of the consolidated assets of the merged banks. In the course of the action it was considered expedient to substitute E. H. Howard as plaintiff in lieu of the Mitchell County State Bank. Howard had been president of the bank before the consolidation.

Judgment being entered for Howard as substituted plaintiff, defendant appeals. Various assigned errors are argued, which will be noted.

Bills and Notes, 8 C. J. pp. 593 n. 25, 820 n. 80, 1003 n. 86, 1046 n. 9; 3. R. C. L. 990.

Howard v. Reiter.

1. Defendant's first point is that the substituted plaintiff did not prove ownership. True; but he did not pretend to own it. He had possession of the note. He could sue on it. And unless there was a *bona fide* defense to the note, it having been negotiable and negotiated in due course, defendant was bound to pay it, and it was immaterial to defendant who held it, so long as in paying it he discharged his unavoidable obligation. (*National Bank v. Greathouse*, 114 Kan. 903, 220 Pac. 1053.) Here there is not the slightest doubt that defendant's obligation is merged in this judgment and its satisfaction will completely discharge the defendant.

2. It is next argued that the bank acquired the trade acceptance with notice of the conditions under which it was given, and consequently the bank or the substituted plaintiff was in no better position to enforce payment than the recreant oil company itself would be.

But what was there for the bank to know to the prejudice of the instrument at the time the bank acquired it? Simply this: The oil company had agreed to build a filling station and to let the maker have $250 worth of goods at half price. Nothing more. Neither the bank nor its cashier could foresee that the oil company would not perform that obligation. Defendant undoubtedly believed the oil company would keep its promise, and so he executed and set afloat in the channels of commerce this negotiable instrument, carrying on its face his unqualified pledge to pay. Anybody was at liberty to buy it. There was no fraud in its inception. Indeed, the only objection of defendant to its payment was the subsequent failure of the oil company to do as it agreed. But at the time the bank acquired the instrument, neither it nor anybody else could reasonably be expected to know that the oil company would not keep its promise. Who should stand the consequences of the oil company's delinquency? The defendant who put his trust in the oil company, or the bank and its substituted plaintiff which put their trust in defendant's signature? In *State Bank v. Harford Bros.*, 116 Kan. 262, 226 Pac. 750, it was said:

"The controlling principle is, if anyone is to suffer loss through the abuse of confidence, it should be the drawers who negligently permitted the instrument to be put into circulation, rather than a holder innocent of the wrong, who acquired it before maturity for value. (*Joseph v. National Bank*, 17 Kan. 256, 8 C. J. 730.)" (p. 267.)

Defendant discovers an analogy between the present case and that of *State Bank v. Weiser*, 117 Kan. 389, 232 Pac. 613. In that case

the note was without consideration and the bank knew that its negotiation was premature and illegal at the time it acquired it, and its cashier was an active participant in the transaction.  Conversely, in this case there was no irregularity to the trade acceptance when issued; there was then no infirmity in it; there was no known or knowable defense to the trade acceptance at the time it was negotiated, and indeed no defense of any sort came into existence until months later when it developed that the oil company had failed to build the filling station.

There is nothing new in this case, and it is controlled by the recent decisions involving similar instruments executed by other victims of the same derelict oil company.  (*Bank v. Fowler*, 113 Kan. 440, 215 Pac. 290; *National Bank v. Greathouse*, 114 Kan. 903, 220 Pac. 1053; *State Bank v. Harford Bros.*, 116 Kan. 262, 226 Pac. 750; *State Bank v. Grennan*, 116 Kan. 442, 227 Pac. 530; *Bray v. Wetzel*, 118 Kan. 283, 234 Pac. 965.)

The appellee has filed a motion to dismiss this appeal, but in view of the conclusion necessarily reached on the merits, that motion need not be considered.

The judgment is affirmed.