THE STATE OF KANSAS v. JOHN BYBEE.

1. AGREEMENT OF JURY; *Motives, and Considerations.* No juror should be induced to agree to a verdict by a fear that a failure to so agree will be regarded by the community as reflecting either on his intelligence, or his integrity. Personal considerations should not influence his conclusions; and the thought of them never should be presented to him as a motive for action.

2. ———— *Error for Court to Coerce an Agreement.* Where upon a charge of assault with intent to kill, the testimony runs in two lines, one tending strongly to prove the full crime charged, and the other to prove an *alibi*, and that the defendant was innocent of any offense, and where it appears that for a long time the jury were unable to agree, and that after having been unable to agree for many hours they are brought into court, and the duty of agreement is strongly urged upon them by the court, who intimates, that it would be a reflection on them not to agree—that there should be concession in matters of detail and of minor importance—that they should bring their minds together as an apothecary mixes different ingredients and ascertains the product, and that they need not hope to be discharged for a long time; and where the whole tendency of this instruction is to impress too strongly upon the jury the duty and necessity of coming

to some agreement, and thereafter the jury return a verdict of guilty of an assault only, *held*, that such verdict ought not to be permitted to stand; that it is too apparently a compromise between those believing defendant guilty of the crime of assault with intent to kill, and those believing him guiltless of any offense, induced wholly or in part by the urgent instructions of the court upon the duty of agreement.

### Appeal from Chautauqua District Court.

INFORMATION, charging that defendant *Bybee*, "on the 4th day of July 1876, at Chautauqua county, in and upon one Jesse Peterson, then and there being, feloniously did make an assault with a certain gun loaded with powder, balls and caps, which he the said John Bybee in his hands then and there had and held, the said gun being a deadly weapon, and the said Bybee then and there, and with the said gun, so loaded as aforesaid, feloniously did shoot at and toward the said Jesse Peterson, with intent him the said Peterson then and there feloniously and willfully to kill and murder, contrary," etc. Plea, not guilty. Trial at the September Term 1876. Verdict, "guilty of an assault only." The judgment and sentence of the court was, "that said defendant pay to the state of Kansas a fine of $500, together with the costs of this prosecution, and that said defendant be committed to the jail of Chautauqua county until said judgment be complied with." *Bybee* appeals. The principal matters complained of are fully stated in the opinion.

*W. C. Webb, R. J. Hill*, and *C. J. Peckham*, for appellant. *J. D. McBrian*, county-attorney, for The State.

The opinion of the court was delivered by

BREWER, J.: Defendant was convicted of an assault in the district court of Chautauqua county, and from that conviction appeals to this court. He insists that the information is insufficient in not specifically alleging that the offense was committed within the state of Kansas. The very question has already been presented to and decided by this court, and

a similar information adjudged sufficient. *The State v. Walter*, 14 Kas. 375. We see no reason to alter the views therein expressed. The principal question however, is presented by the following bill of exceptions:

(*Title.*) *September Term 1876.* Be it remembered, that after this case had been submitted to the jury, and after the jury had deliberated upon their verdict several hours, they were brought into court, and asked by the court if they had agreed upon a verdict. The jury having answered in the negative, the court addressed them in substance as follows:

"*Gentlemen of the Jury:* I am led to infer from the character of your communications to me that you think it impossible to agree, and desire to be discharged. You have heard the evidence, and the case has been ably argued by counsel, and the court has afforded every facility to enable you to understand the case. The trial has been very expensive to the public, and has occupied a great deal of time and attention, and it is not possible that it will ever be more clearly presented than it has been in this its first presentation to a jury. I do not desire to try the case again. It is often considered a reflection on the court, and upon you, as jurors, should you not agree. You have been impanneled to come to an agreement, not to wrangle over pet ideas and theories. It is the duty of the jury to agree if possible. The theory of an agreement by the jury is, that twelve minds are brought as nearly together as it is possible for twelve minds to come. To bring about this result, it is necessary for the individual juror (in matters of detail, and on questions of minor importance,) to defer to some extent to his fellow jurors, and to surrender some of his own ideas and opinions to what seems to be an overwhelming sentiment against him. None of us are infallible. And in your deliberations you should realize this, and mutually depend upon each other. And in the consideration of the details of the case, you should meet the questions as they arise, in a spirit of mutual concession and forbearance, and thus gradually as you proceed step by step to arrive at a conclusion to which you can all assent, although if left to yourselves you would probably come to a different conclusion. You should bring your minds together like the mixing of different ingredients by an apothecary, and ascertain what is the product. In a case of this importance I feel it to be my duty to afford you the most ample opportunity to agree. It is not my purpose to force you to a verdict not in accordance with

your convictions.   My experience with juries has taught me that they often agree after they have imagined it impossible to do so, and after the agreement they have been surprised that they ever disagreed.   I hope this will be your experience.   I therefore urge upon you to make another effort, in a spirit of reconciliation, and fairness to each other, to the accused, and to the public, and if possible agree upon a verdict; and I warn you not to think of being discharged for some time to come." ·

To the giving of which charge or instruction, and each and every part thereof, defendant at the time duly excepted — first, because said instruction was not in writing.   [This objection was entered after the delivery of the foregoing to the court, but counsel for the defendant had no intimation that the court intended to address the jury as above until after the address was delivered.]   Second, because said instruction, and each and every part thereof, is error in law; third, because the giving of such instruction, after the retirement of said jury for deliberation upon their verdict, is erroneous, and unauthorized.   But the court overruled such objections, and each of the same, to which the defendant at the time duly excepted, and still excepts, and asks the court to sign this his bill of exceptions, and make the same part of the record, which is done accordingly, this 15th of September 1876.

W. P. CAMPBELL, Judge.

We are constrained to believe, after a careful examination of the record, that the jury were misled by this instruction, and that there ought to be a retrial.   The testimony impresses us forcibly with the conviction, that the defendant was either guilty of an offense higher than that of which he was found guilty, or guiltless of any offense.   The prosecuting witness, and his wife, testified that defendant and another party came to their house in the night-time, and standing within twenty feet, fired several shots into the building.   The building was a log house, one story, and one room, and the chinking between the logs had dropped out so that the cracks between the logs were open, from the width of a hand, up.   Some of the bullets passed through the bedtick upon which prosecuting witness and his wife were sleeping.   There was testimony also of a previous quarrel, and ill-feeling between

the parties. The defendant denied the shooting, or being present at or near the house of the prosecuting witness that night, and testified that he was at his own home all the night. There was also corroborating testimony, but there were distinctly the two lines of evidence. Now had the jury credited the defendant's testimony, they could not have done otherwise than acquit; and it seems to us, that had they credited the testimony of The State, they must have found the defendant guilty of something more than a mere assault. And the punishment which the court imposed, a fine of five hundred dollars, indicates its judgment as to the aggravated character of the offense. It also appears, both from the bill of exceptions and from other parts of the record, that the jury were for a long time unable to agree; and if we may credit some of the affidavits filed upon the motion for a new trial, were evenly divided. It seems to us under these circumstances, that the remarks of the learned court were calculated to exert too strong a pressure upon the jury in favor of the agreement. It may not perhaps be possible to single out any particular sentence, and say that this is, strictly speaking, and taken by itself, erroneous, and sufficient to justify a reversal, though there are some that seem to trespass a good deal on the right and duty of each juror to the free exercise of his individual judgment. Yet the general impression of these instructions, as we read them, and as it seems to us must have been received by the jury, is, that the jury ought, by compromise, and surrender of individual convictions if necessary, to come to an agreement, and that a failure to do so would be an imputation upon both jury and court. Now while a court may properly call the attention of the jury to many matters which increase the desirability of agreement, such as the time already taken, the improbability of securing additional testimony, the general public benefit in a speedy close of a litigation, and, at least in cases where the matters at stake are of minor importance, the question of expense to the parties and the public, yet no juror should be influenced to a verdict by a fear of personal disgrace, or pe-

cuniary injury. No juror should be induced to agree to a verdict by a fear that a failure to so agree would be regarded by the public as reflecting upon either his intelligence, or his integrity. Personal considerations should never be permitted to influence his conclusions; and the thought of them should never be presented to him as a motive for action. Nor do we think the illustration given by the learned judge a happy one. A verdict is the expression of the concurrence of individual judgments, rather than the product of mixed thoughts. It is not the theory of jury trials, that the individual conclusions of the jurors should be added up, the sum divided by twelve, and the quotient declared the verdict, but that from the testimony each individul juror should be led to the same conclusion; and this unanimous conclusion of twelve different minds, is the certainty of fact sought in the law. Especially is this true in criminal trials. Here should no thought of compromise be tolerated. Before the state can fairly demand the conviction and punishment of an alleged criminal, the twelve jurors should each be led from the testimony to a clear conviction of his guilt; and where six jurors believe a defendant guilty of murder, and six believe him innocent of any offense, it is an outrage for the twelve to bring in a compromise verdict of guilty of manslaughter. We fear that something of this kind occurred in this case, and that the charge above quoted was mainly instrumental in producing this result. At any rate, it seems to us clear, that such would be the tendency of those instructions; and it is not apparent that it did not have that effect. For this error the judgment must be reversed, and the case remanded with instructions to grant a new trial.

All of the present members of this court have had experience as district judges, and know what is their solicitude for the agreement of juries, and their repugnance to see the labors of a trial prove abortive through the failure of the jury to agree. We therefore fully appreciate the considerations which induced these instructions from the learned judge, and fully sympathize with the spirit which controlled him, but are nev-

ertheless constrained to believe that he passed beyond the line which should limit the counsels and instructions of a court to a jury, and that thereby the material rights of the defendant were prejudiced.

All the Justices concurring.