No. 26;169.

THE STATE OF KANSAS, *Appellee,* v. ROBERT RIEMAN, *Appellant.*

SYLLABUS BY THE COURT.

1. PROSTITUTION—*Procuring to Go from Place to Place—"Procurement" De-fined.* In the statute making it a felony for any person to persuade, induce, entice or procure any female person to go from one place to another within the state for the purpose of prostitution, fornication, or concubinage, the word procure means to bring about, effect, cause; and neither persuasion nor inducing or enticing attraction are necessary to procurement.

2. SAME—*"Go" Defined.* Besides being used in the active sense, the word "go" in the statute has the passive meaning of to be conveyed, as "to go by auto-mobile."

3. SAME—*Nature and Essentials of Offense.* It is not essential to conviction under the statute that the female share in the immoral purpose, or know of it, or that immoral conduct take place. It is sufficient that she be pro-cured to go from one place to another for one of the specified purposes.

4. SAME—*Evidence—Sufficiency.* The evidence considered, and *held,* the de-fendant procured the prosecuting witness to go from a house on a street of a city to a barn on a road to another city, for the purpose of fornication.

5. SAME—*Evidence—Corroboration.* The evidence considered, and *held,* the testimony of the prosecuting witness to facts warranting conviction was well corroborated.

Appeal from Dickinson district court; CASSIUS M. CLARK, judge. Opinion filed May 9, 1925. Affirmed.

*C. E. Rugh, Matt Guilfoyle,* both of Abilene; *John S. Dean, Harry W. Colmery, John S. Dean, Jr.,* and *C. B. Randall,* all of Topeka, for the appel-lant.

*C. B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, and *Paul H. Royer,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant appeals from a conviction under the fol-lowing statute:

"Any person . . . who shall persuade, induce, entice or procure . . . any female person . . . to go from one place to another within this state, for the purpose of prostitution, fornication or concubinage, shall be deemed guilty of a felony." (R. S. 21-937.)

The affair began in the evening of January 7, 1924. There were four boys, Jack, Zack, Vernon, and the defendant, Robert, and an automobile. Robert drove the car. They went to the place where

37—118 KAN.

Frances, the complaining witness, worked. She was introduced to Robert by Jack, who knew her, and she got into the car when informed the intention was to pick up three other girls. Two other girls, Flora and Connie, who were sisters, were found, and were taken into the car. As thus constituted, the party went to the home of Goldie, on North Cedar street in Abilene. She could not go with them, and they remained there, talking, dancing to victrola music, and otherwise amusing themselves without impropriety. About 10:30 o'clock Flora went home. She walked, and went alone. Later, Frances, Connie and Vernon suggested it was getting late, and said they must go home, and about eleven o'clock the four boys and Frances and Connie got into the automobile to go home. Frances sat in the front seat between Robert and Vernon. The others sat in the rear seat. Instead of taking either of the girls or any of the boys home, Robert drove to a barn on the road between Abilene and Enterprise. On the way, Frances heard Vernon say something about it being necessary for him to feed the mules. Robert and Vernon testified that soon after leaving the house Vernon asked to be taken to the barn to perform an evening chore of turning off water running into a watering trough. Arriving at the barn, Vernon got out of the automobile and went into the barn. Frances testified that Robert pushed her out. Robert and Zack then got out, and she was led into a room of the barn, to get warm, although there was no stove there, and then into another part of the barn. She would not stay there, and returned to the automobile. Robert came to the automobile, and insisted that Connie get out, which she presently did, accompanied by Jack. Frances then got into the rear seat of the automobile, Robert followed her and, after making some threats, had sexual intercourse with her. When Vernon had finished whatever he did in the barn, he came out, went to the automobile, and had sexual intercourse with Frances in the rear seat. Robert offered to hold her for him. Connie continued in company with Jack inside the barn all the time they were there, and Zack was a bystander. When Vernon was through with Frances, Robert took him home in the automobile. While Robert was gone, Zack took Frances into the barn and had sexual intercourse with her in a manger. When Robert returned, he took the two girls and the other two boys to their homes. Frances reached home at 11:45. She was pregnant at the time of the trial.

Defendant contends the court did not instruct the jury sufficiently

The State v. Rieman.

with reference to persuasion, inducement, and enticement, as essential elements of the offense to be found by the jury before they were warranted in convicting him. · There is no dispute that Frances went from the house on Cedar street to the barn, and there is no dispute about the occasion and manner of her going. The party at the house broke up. Flora had already gone home, and Frances and Connie wanted to go home. The four boys and two girls got into the automobile, and the defendant drove the automobile with its occupants, including Frances, to the barn. No persuasion, inducement or enticement was employed by way of gaining Frances' consent to go to the barn, her will in the matter was not consulted, and if, before reaching the barn, she learned she was not going directly home, she entered no protest. The result is, the content of the instructions, which defendant did not ask to have elaborated, is not now important, and the substantial question is whether the undisputed facts bring the case within the statute.

The statute contains the word "procure." While procurement may be by coaxing, tempting, luring, and the like, which are characteristic means of enticement, neither persuasion nor inducing or enticing attraction need be employed. Generally, in the criminal law, the word "procure" has the popular, which is also the dictionary meaning, to bring about; effect; cause. (*Rosenbarger v. State,* 154 Ind. 425; *Hines v. State,* 16 Ga. App. 411; *Long v. State,* 23 Neb. 33; *Marcus v. Bernstein,* 117 N. C. 31; *United States v. Somers,* 164 Fed. 259.)

In the active sense of the word, Frances did not "go" to the barn. She was taken there. But go is frequently used in the passive sense of to be conveyed, as "to go by train" (Webster's New Int. Dic.), "to go by automobile," and the word as used in the statute includes such meaning.

The conclusion is that the admitted facts show defendant procured Frances to go from the house on Cedar street to the barn, within the meaning of the statute.

The statute requires the procurement shall be for one of the immoral purposes named. It was not necessary that Frances should share in the purpose, or know of it, or that on arrival at the barn immoral conduct should take place. The offense was complete if defendant procured her to go to the barn for one of the specified purposes. What was the purpose of the expedition to the barn? The evidence which has been stated warranted the inference that

feeding the mules or turning off the water was an ostensible purpose, serving to mask the dominating one, which was fornication.

Frances alone testified to accomplishment of the purpose for which she was procured to go to the barn. Robert, Vernon, and Zack denied that any impropriety occurred, and Connie and Jack said they knew nothing of what occurred in the rear seat of the car and in the manger. The statute provides that no conviction shall be had on the uncorroborated testimony of the woman. (R. S. 21-937.) Defendant contends there was no corroboration of Frances' testimony.

As indicated above, the facts establishing procurement to go from the house to the barn are not disputed. The nature of the purpose only is disputed. Corroboration may be by evidentiary facts and circumstances (*The State v. White,* 111 Kan. 196, 206 Pac. 903).

On arrival at the barn, the car was stopped some twenty feet from the building, which consisted of an office and a main part entered through the office. Connected with the barn was a corral in which there were thirty or forty head of mules, watered by city water running through a faucet into a trough. The water was allowed to run slowly during the day, and was turned off in the evening. There is no dispute that Vernon was the first to leave the car, and he went directly into the barn. Defendant says he was with Frances, and on the way to the barn she sat between him and Vernon, on the front seat. Defendant drove directly from the house to the barn, and those in the rear seat were not apprised that they were being taken to the barn. They supposed defendant was taking the members of the party home. When they arrived at the barn, no one had anything to do there except Vernon, and there was no occasion for young men and young women, possessed of decent regard for propriety, to leave the automobile and go into the barn together at that time of night.

No two of the boys were able to tell the same story with reference to the conduct of the various members of the party after Vernon went into the barn. It is agreed that Frances was the second one to leave the car, and that Connie and Jack were the last. Robert says that when Frances left the car she walked over to the door of the barn, that after the others were out of the car they walked over to the door of the barn, where Frances was standing, and that just as Vernon was coming out of the barn, the others all went into

the office. Zack says it was ten or fifteen minutes after Frances got out before he and Robert got out, and he and Robert stood around the office and talked until Vernon came. Vernon says it took him only five or seven minutes to do his work, and when he returned Frances was in the office alone, but just as he came into the office the others came in. Zack says that Frances returned to the car and got into it while he and Robert were standing around the office talking. So the testimony of Frances, that she left the party at the barn, returned to the car, and got into it, is definitely corroborated by the eye witness, Zack. Zack said that when Vernon came back from his work in the barn, Vernon got into the car. It is true Zack said he "believed" Vernon said something about having to go back, that he would have to be going home, but Zack has Vernon do just what Frances said he did, get into the car after he finished his work inside the barn.

Robert says that when, on arriving at the barn, Vernon left the car and started toward the barn, Vernon told the others to wait a few minutes and he would be back. According to Vernon's testimony, he was back at the office within a few minutes, and according to the testimony of Robert and Vernon, then or immediately afterward the whole party assembled in the office. The purpose of deviating from the homeward route to the barn was then fully accomplished. It was late, and there was nothing to do but get into the car and go home. What happened? Robert took Vernon home. Robert had difficulty in starting the car, and Zack and Frances pushed on the car to get it going. Jack and Connie had gone from the office into the main part of the barn, and while they were sitting there on a bale of hay, talking, Zack and Frances were left together to while away the time until Robert returned.

The result is, three opportunities, the last one deliberately framed, for just such conduct as Frances described, were fully established, without considering her testimony.

What corroborative evidence is there of lustful purpose on the part of Robert? Connie says that when Vernon went to the barn, Robert pushed Frances out of the car, and the very cautious witness, Jack, admits that Robert took hold of Frances' arm and insisted on her getting out. One inference might be that Robert's purpose was to get Frances into the barn. Connie says that Robert came back to the car to get her out. Why? One answer might be that, having failed to accomplish his purpose in the barn, he

wanted to use the back seat of the automobile. Later, Connie herself was obliged to repulse him. After she and Jack had gone from the office into the main part of the barn, Robert came in. At the trial, Jack was asked this question: "I will ask you if he didn't take hold of Connie and try to get her to lay down and have sexual intercourse with him?" The answer was: "Well, Bob took hold of her arm, and she said for him to let her go, and she got kind of angry, and he let her go, and he didn't take hold of her any more."

Jack, the only one of the boys who was not arrested, testified that, after the girls had been taken home, they drove uptown, and there was considerable laughing and joking about what had occurred at the barn. He also testified that about two nights later there was conversation at a restaurant between Robert, Vernon, Zack and another boy concerning "the deal" at the barn, but Jack's memory of what was said failed completely, as it did at other times in the course of the trial. A witness said he talked with Robert about the deal Robert, Vernon and Zack got into with some girls, and might have advised Robert to leave town for awhile and let the thing "quiet over." Robert admitted an attorney suggested that to quiet things he should leave town, and it so happened that Robert did leave town to make a visit to his grandmother.

The conclusion is, the testimony of Frances was well corroborated.

The court gave to the jury the instruction approved in *Commonwealth v. Tuey*, 8 Cush. (Mass.) 1. To the instruction the court appended an admonition, clearly and forcibly restating the matter carefully expressed at the beginning. Guarded in this way, the instruction contravened no decision of this court, and there is no reason to believe it was prejudicial. A motion to continue was properly disallowed, and the decision of the court, on motion for new trial, respecting qualification of a juror, was sustained by testimony of the juror given orally in court.

The judgment of the district court is affirmed.