No. 32,812

Fred Eikmeier, *Appellant,* v. H. C. Bennett, *Appellee.*

(57 P. 2d 87)

Opinion filed May 9, 1936.

A. C. *Malloy, Roy Davis, Warren H. White, Frank S. Hodge, J. N. Tincher, Clyde Raleigh* and *Leaford F. Cushenbery,* all of Hutchinson, for the appellant.

C. M. *Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellee.

The opnion of the court was delivered by

Thiele, J.: In this appeal the sole question is whether the trial court erred in giving a particular instruction to the jury.

The action was for damages from negligent use of a truck. At the conclusion of the evidence the court instructed the jury, and as to those instructions there is no complaint. The cause was submitted to the jury at 9 a. m. on April 25, 1935. At 5 p. m. the jury reported it was unable to agree. Court was adjourned until 9 a. m. of the following day, when the trial court, on its own motion, without request from any party and in the absence of any party or his counsel, gave the jury the instruction herein quoted and of which complaint is made. The jury then retired to deliberate further, and between 10 and 11 a. m. returned a verdict in favor of the defendant.

The instruction was as follows:

"You are instructed that the only mode provided by our constitution and laws for deciding questions of fact in trials is by the verdict of the jury.

"In a large portion of cases absolute certainty cannot be obtained or expected. Although the verdict to which a juror agrees must be his own verdict, the result of his own convictions and not a mere acquiescence in the conclusion

of his fellow jurors, yet in order to bring twelve minds to a unanimous result you must examine the questions submitted to you with candor and with a proper regard and deference to the opinions of each other. You should consider that the case must at some time be decided; that you are selected in the same manner and from the same source from which any future jury must be, and there is no reason to suppose that the case will ever be submitted to twelve men more intelligent, more impartial or more competent to decide it, or that more or clearer evidence will be produced on one side or the other. And with this in view, it is your duty to decide the case if you can conscientiously do so.

"In conferring together you ought to pay proper respect to each others' opinions and listen with a disposition to be convinced of each others' arguments and if a much larger number of your body are for one side, a dissenting juror or jurors should consider whether or not they are reasonable in their opinions, where others equally honest and intelligent as themselves who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath, hold a contrary view.

"Consider the evidence carefully, consider where the burden of proof has been placed as you have been instructed, read the instructions of the court, and then decide the case solely on its merits in the light of the evidence and the instructions, remembering, however, that the verdict to which each juror consents must represent his individual judgment in the case."

Defendant's motion for a new trial was denied, and he appeals, his assignments of error including that the court erred in giving the quoted instruction without notice to and in the absence of the parties and their counsel and without request from the jury; that the instruction as given was erroneous, and that the court erred in not allowing the motion for a new trial.

In support of the first assignment, appellant relies upon R. S. 60-2911 and 60-2913, and *Joseph v. National Bank,* 17 Kan. 256, and *Tawzer v. McAdam,* 134 Kan. 596, 7 P. 2d 516. The provisions of the code do not of themselves settle the contention. The first section (R. S. 60-2911) has no direct reference to the court's communications with the jury after submission of the cause. Perhaps it might be said the second section (R. S. 60-2913), which provides that after the jury have retired for deliberation, if they desire further information, they may be returned to the court, because it does not provide for voluntary information by the court, intends the contrary. We are inclined to the opinion that such a construction of the statute would be unduly strict, for, in the trial of any action, it is proper for the court to inquire as to the progress of the jury's deliberations. In such situation, the court may discover the jury is not fully advised as to some phase of the law or instructions as given, in

which event, it would seem proper further instruction should be given. In 1 Blashfield's Instructions to Juries (2d ed.) § 215, it is said to be a rule of almost universal application the trial court may, after the jury has retired to deliberate, give further instructions, the trial court having a large discretion with respect thereto; that (§ 217) the decisions are not harmonious with respect to right of parties to have additional instructions so given; that (§ 222) the additional instruction should be given in open court, and that (§ 224) there is conflict in the decisions as to necessity of counsel being present when such additional instructions are given.

In *Joseph v. National Bank,* supra, although the lower court's judgment was affirmed for lack of positive showing counsel were not present, it was said:

"Where a disagreement arises between the members of a jury after they have retired for deliberation, they may be returned into court and further instructions given them with reference to the matter about which they disagree, and the court in further instructing them may exercise some discretion as to the extent of its instructions.

"It would be error in such a case for the court to give such further instructions in the absence and without notice to the parties or their counsel; but where the record brought to the supreme court 'is a case made for the supreme court,' and is silent with reference to the presence or absence of the parties and their counsel, it will be presumed that they were all present." (Syl. ¶¶ 5, 6.)

In *Tawzer v. McAdam,* supra, it was held it was reversible error for the presiding judge to have a conversation, respecting matters under consideration, with the jury in the jury room and while the jury was deliberating. Appellee calls our attention to *Underwood v. Fosha,* 96 Kan. 240, 150 Pac. 571, in support of his contention the giving of additional instructions was not error. That was the holding in that case, but it was a negative rather than a positive holding, for there the court said:

"(5) After this cause was submitted and the jury had deliberated upon it for two days, the court voluntarily gave them another instruction. The practice is not altogether rare; it should be used with great circumspection, for the obvious reason that jurors who have deliberated long upon a case will be apt to seize on a belated instruction and give it more than its proper proportionate significance. We do not find, however, that the practice has been condemned." (p. 246.)

It must be borne in mind that circumstances may alter any situation. In the case before us, the additional instruction was given when court convened for its morning session, and parties and their counsel might reasonably have been expected to be present, although

they might well have assumed the jury having been duly instructed, no additional instruction was necessary or would be given. The same instruction might have been given at some other hour when they had no reason to suspect anything would occur except for the jury to finally render its verdict. On the other hand, the court knew the evening before the jury were not agreed, and it would have been a simple matter to have notified absent counsel additional instructions were to be given. Some weight must also be given to the character and intendment of the additional instruction, some instructions might only be reiteration of those already given, or explanatory of them; others would cover matters not previously mentioned. We are not inclined to hold that in every case it would be error to give the jury additional instructions without notice to or presence of parties or their counsel, although the practice is subject to much criticism. The difficulty in showing a prejudicial result is almost insurmountable, and the trial courts should avoid putting the losing party in such a predicament. In the case before us, however, whether the giving of the additional instruction constituted reversible error cannot be disconnected from consideration of the instruction given, which it is contended is coercive and intended to force a verdict.

In considering the cases in which the matter of coercive instructions has been discussed, there will be found those about which there can be little doubt the instruction given was coercive, examples being: *Neely v. Travelers Ins. Co.*, 141 Kan. 691, 693, 42 P. 2d 957; *State v. Beacon Publishing Co.*, 141 Kan. 734, 744, 42 P. 2d 960; *Moore v. Owens*, 143 Kan. 620, 56 P. 2d 86. On the other hand, some of the remarks of the trial court, or its so-called coercive instructions, have been so mild or have been made or given under such circumstances that the court decided they did not warrant reversal. (See *Pacific Railroad Co. v. Nash*, 7 Kan. 280; *Moore v. Cass*, 10 Kan. 288; *State v. Garrett*, 57 Kan. 132, 54 Pac. 93; *Karner v. Railroad Company*, 82 Kan. 842, 109 Pac. 676.) There is also a class of cases where the claimed coercion was based on remarks which it was contended threatened to hold the jury until an agreement was reached. (*Sibley v. Cotton Mills Co.*, 85 Kan. 256, 116 Pac. 889; *Brecheisen v. Clark*, 103 Kan. 662, 176 Pac. 137; *Alcorn v. Cudahy Packing Co.*, 125 Kan. 493, 264 Pac. 741.) None of the above lists of cases is intended to be exhaustive, simply illustrative.

There is also that class of cases, similar to the one under consid-

eration, where after the jury has deliberated for some time, the court gives an additional instruction concerning the duty of the jury to come to a meeting of minds and agree on a verdict.

This court is not unaware of the difficulties under which trial judges perform their duties and the repugnance with which they observe juries disagree when to the court's mind no good reason for disagreement exists. Neither are we unaware that for some time past, trial judges collectively and individually have given attention to framing an instruction, the intent of which is to avoid disagreements of juries, the desired instruction being one which will avoid the Scylla of impotence and futility on the one hand and the Charybdis of obvious error on the other.

Other cases having an instruction of like effect might be cited, but apparently the instruction in *Commonwealth v. Tuey*, 8 Cush. (Mass.) 1 (decided in 1851), has been the inspiration for others of like effect. Although that instruction was approved by that court, it should be remembered that in that state at that time the right of the trial court to comment on the evidence was recognized, a situation that does not obtain in this state. Therefore, the instruction may not have had the same insidious effect it would have if given in one of our district courts. The instruction there approved read:

"The only mode, provided by our constitution and laws for deciding questions of fact in criminal cases, is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that the case must at some time be decided; that you are selected in the same manner and from the same source from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And with this view, it is your duty to decide the case, if you can conscientiously do so. In order to make a decision more practicable the law imposes the burden of proof on one party or the other in all cases. In the present case, the burden of proof is upon the commonwealth to establish every part of it, beyond a reasonable doubt; and if, in any part of it, you are left in doubt, the defendant is entitled to the benefit of the doubt, and must be acquitted. But, in conferring together, you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider

whether a doubt in his own mind is a reasonable one, which makes no impression upon the minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves, whether they may not reasonably, and ought not to doubt the correctness of a judgment, which is not concurred in by most of those with whom they are associated; and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows." (p. 2.)

The Tuey case has been cited often. We need not note those decisions of other states either approving or disapproving what is there held, further than to note in *Highland Foundry Co. v. N. Y., N. H., & H. R. R.,* 199 Mass. 403, 85 N. E. 437, it was said:

"There is perhaps no case in our reports more familiar to those, whether on the bench or at the bar, who are engaged in the trial of jury cases, than *Commonwealth v. Tuey.* It is often quoted or read to juries slow in coming to a verdict, and many times with salutary effect. But it generally has been regarded by the profession as going nearly if not quite to the extreme limit. The charge to which exception was taken in that case was made in a trial in the court of common pleas, by a judge who afterwards became a conspicuous judge of this court, and who enjoyed the reputation of being one of the most accomplished jurists of the commonwealth. In delivering the charge he was treading on delicate ground, and evidently was aware of that fact. His words seem to have been chosen with great care." (p. 407.)

In *State v. Bybee,* 17 Kan. 462, 464, the trial court gave an additional instruction, quoted in full in the opinion, calling attention to the expense of the trial; that on another trial the case would be no more clearly presented; that the jury was impaneled to agree and not wrangle, etc., and that the jury should bring their minds together like the "mixing of different ingredients by an apothecary, and ascertain what is the product." In holding the instruction coercive, this court, in an opinion by Brewer, J., said:

"It seems to us under these circumstances, that the remarks of the learned court were calculated to exert too strong a pressure upon the jury in favor of the agreement. It may not perhaps be possible to single out any particular sentence, and say that this is, strictly speaking, and taken by itself, erroneous, and sufficient to justify a reversal, though there are some that seem to trespass a good deal on the right and duty of each juror to the free exercise of his individual judgment. Yet the general impression of these instructions, as we read them, and as it seems to us must have been received by the jury, is, that the jury ought, by compromise, and surrender of individual convictions if necessary, to come to an agreement, and that a failure to do so would be an imputation upon both jury and court." (p. 466.)

In *State v. Rogers*, 56 Kan. 362, 43 Pac. 256, the court gave an additional instruction, set out in full in the opinion, of which complaint was made. It will be noted that while the court called attention to expense of another trial, with probably no more evidence than had been presented, and that there was no more reason why the present jury could not decide with the same fairness as any other jury, nothing was said about the duty of any juror to make his opinion coincide with that of his fellow jurors. In disposing of the contention the instruction was coercive, it was said:

"The practice of calling in a jury and lecturing them upon the desirability of an agreement, although obtaining to a considerable extent in this state, is not to be commended. Jurors very generally understand the importance of agreement, and the inconvenience and expense of another trial. It is presumable that, in their arguments pro and con for many hours together, they chide each other sufficiently, and they ought not to be visited with a scolding by the court because differences of opinion still remain. In this case, however, the oral remarks of the court seem to have had no immediate or early effect, for there was no verdict until the next day; and upon considering the language of the court, we cannot see enough in the remarks to induce us to believe that they were efficacious in producing an agreement. The language is compared with that used in *The State v. Bybee*, 17 Kan. 462, 464, 465, but there is little resemblance; and under the circumstances of this case we would not feel warranted in ordering a reversal, as the remarks contain nothing in the nature of instructions, unless at the close, and this was at most but a harmless repetition." (p. 372.)

In *Shouse v. Consolidated Flour Mills Co.*, 128 Kan. 174, 277 Pac. 54, reversed for other reasons, it was said:

"The defendant complains of admonitions given by the court to the jury concerning agreement after it had developed that the jury was having difficulty in reaching a verdict. On two separate occasions the court admonished the jury concerning agreement, in the first of which the court said: 'It isn't the duty of any one juror to take an obstreperous or obstinate stand where there are reasonable grounds for minds to differ and so hang the jury.'

"In the second admonition given to the jury the court stated: 'I feel like you should endeavor to accommodate your views or differences to the others and come to an understanding or agreement, if it can humanly be done.'

"The language used by the court went further than was justified, but it is not necessary for this court to now say that a reversal is compelled for that reason." (p. 179.)

In *State v. Rieman*, 118 Kan. 577, 235 Pac. 1050, this court said:

"The court gave to the jury the instruction approved in *Commonwealth v. Tuey*, 8 Cush. (Mass.) 1. To the instruction the court appended an admonition, clearly and forcibly restating the matter carefully expressed at the beginning. Guarded in this way, the instruction contravened no decision of this court, and there is no reason to believe it was prejudicial." (p. 582.)

Reference to the briefs in that case show the appended admonition was:

"In this connection, however, you are again admonished that the verdict to which each juror consents must represent his individual judgment in the case."

In *State v. Richardson,* 138 Kan. 471, 476, 26 P. 2d 251, a similar instruction was under consideration, although it is not set out in the opinion, and after quoting from *State v. Rieman,* supra, it was said:

"We do not regard the giving of this instruction as of sufficient gravity to warrant a reversal, since the record does not permit this court to entertain any misgivings as to the correctness of the result." (p. 476.)

In *State v. Hathaway,* ante p. 605, 56 P. 2d 89, an additional instruction, alleged to be coercive and prejudicial, is set out in the opinion and not here repeated. It contains no statement with reference to a minority of the jury giving heed to the views of the majority. In disposing of the appellant's contention the giving of the instruction was erroneous, it was said:

"Touching the court's observations as to the desirability of verdicts and the avoidance of disagreements, this court finds nothing therein which was either coercive or prejudicial. However, it is proper to say that such general observations touching the duty and responsibility of jurors, in our system of administrative justice, would better be given when the venire is first convened. In such circumstances the court's instructive admonitions would pertinently apply to all cases on which the assembled jurors would serve during the term. Such is a familiar practice in the federal courts. The wisdom of such a lecture on jurors' duties given in the middle of their deliberations in a particular case is not so clear." (p. 609.)

There are other decisions of this court which might be referred to, but those mentioned are representative and characteristic of what has been said with respect to claimed coercive instructions. In 85 A. L. R. 1420 will be found an exhaustive annotation covering the subject of comments and conduct of trial judges calculated to coerce or influence the jury to reach a verdict in a criminal case, citing cases from many jurisdictions. From an examination of our decisions, it can readily be seen that while this court has refused on occasion to reverse judgments of the trial court because instructions have been given having a tendency to coerce an agreement by directing the jurors to reason together and talk over existing differences and to harmonize them if possible, to act in a spirit of fairness and candor, not to stand out stubbornly, etc., or by calling attention to the purpose for which the jury was impaneled, it has not approved the giving of any instruction the effect of which was to

say the difference of opinion should cause the minority to doubt the correctness of their own judgments and lead them to reëxamine the opinion of the majority for the purpose of revising their own first opinions. On the contrary, even though for reasons assigned, this court did refuse to reverse, in most instances the practice of giving instructions to the jury, after deliberation has begun, the effect of which has even tended toward coercion, has been disapproved, if not condemned.

The only purpose in giving such an instruction as we have under consideration is to coerce the jury to agree, otherwise there would be no point in giving it. If the trial court felt there would be need to center attention of the entire panel of jurors on the purposes for which it was called, the duties of the individual jurors in consideration of cases in which they might sit, etc., as said in *State v. Hathaway*, supra, it would be better were it done when the entire panel of jurors first assembles. If not then given, for adequate reasons arising during the trial of a particular action, such an instruction might not be out of place in connection with other instructions given when the cause is submitted to the jury. But even a very temperate instruction, given after the jury has deliberated for some hours, may very easily concentrate attention on the duty of jurors to agree, to the prejudice of one party. To say to a minority that they should reëxamine their views in the light of the opinion held by the majority, without putting a like duty on the majority respecting the opinion of the minority, is wrong. The minority may be right and the majority wrong. Until the legislature provides for verdicts by a definite majority of the jury, the court, by additional instruction, should not suggest, even faintly, that the opinion of the minority is to be controlled by that of the majority.

The instruction under consideration was evidently patterned after that in *Commenwealth v. Tuey*, supra. In reading the instruction given, it must of course be taken as a unit, and so taken it may not be possible to single out any sentence, and say that taken by itself it is erroneous and sufficient to justify reversal (*State v. Bybee*, supra). But to examine the instruction, we must take its various sentences and paragraphs separately. The second paragraph is much more suited for inclusion in instructions originally given, although advising the jury they should consider the case must sometime be decided, stresses a matter with which they are not

presently concerned. This paragraph, given at the time it was, is somewhat specious, and the statement there is no reason to believe the case will ever be submitted to twelve more intelligent, impartial and competent jurors savors a little too much of unjustified flattery, especially when considered with the statements of the third paragraph. The third paragraph is a direct appeal to the minority of the jury to accommodate their minds to the opinions of the majority. It is proper to advise the jury that in conferring together they should pay proper respect to each other's opinions and listen to each other with a disposition to be convinced, but to go further and advise the minority to doubt their own judgments is erroneous. Had a corresponding duty been put on the majority, the effect might have been different, but if such an instruction is proper, it should be given on the original submission. After putting in the coercive third paragraph, the instruction proceeds in the fourth paragraph to reiterate matters touched on in the original instructions, and closes with the admonition the verdict to which each juror consents must represent his individual opinion. If that admonition were the forceful part of the instruction, it was needless; the jury were told its substance in the original instructions. Apparently this qualifying paragraph was inspired by the appended admonition to the Tuey case instruction, as mentioned in *State v. Rieman*, supra, and while it was there said the instruction contravened no decision of this court and there was no reason to believe it was prejudicial, it is doubtful whether the conclusion would be correct, or if correct, of controlling effect under the circumstances of this case. It would seem the third paragraph put in the poison, and the fourth paragraph was intended as an antidote. However that might be, the minority of the jury, after the instruction was given, made their minds agree with the majority, and in less than two hours a verdict was reached.

The difficulty of showing prejudice has been heretofore mentioned. All of the circumstances here, the length of time the jury had previously deliberated, the fact the instruction was given without notice and in the absence of the parties or their counsel, the content of the instruction, the early agreement thereafter, lead to the conclusion the instruction was not only coercive, but was prejudicial to the appellant. As stated in an early part of this opinion, we are not inclined to hold the voluntary giving of additional instruc-

tions in all cases is error. We do hold that it was in this case. We also hold the instruction as given was erroneous and prejudicial. Appellant's motion for a new trial should have been sustained.

The judgment of the lower court is reversed, and the cause remanded for a new trial.