No. 39,546

Mrs. Arthur Byas, *Appellee*, v. Dodge City Rendering Company, a Corporation, and Maryland Casualty Company, a Corporation, *Appellees*, and Eugene O. Day, W. C. Smith and Tri-State Insurance Company, a Corporation, *Appellants*.

(279 P. 2d 252)

Opinion filed January 22, 1955.

*Richard A. Hickey*, of Liberal, argued the cause, and *Collis R. Harner*, of Dodge City, and *Rex A. Neubauer* and *Ronald N. Kaarbo*, both of Liberal, were with him on the briefs for the appellants.

*Wm. P. Thompson*, of Wichita, argued the cause, and *John William Wood*, of Liberal, and *A. W. Hershberger, J. B. Patterson, Richard Jones, H. E. Jones* and *Jerome E. Jones*, all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Price, J.: This was an action brought by the widow, for the benefit of herself and her three minor children, for the wrongful death of Arthur Byas, who died as the result of a collision between the truck driven by him and a truck being driven by defendant Day.

An intervening subrogation petition and three cross-petitions were filed in the action, and all claims and issues were consolidated in the lower court for trial. One phase of the case, now immaterial, reached this court in *Smith v. Dodge City Rendering Co.*, 175 Kan. 243, 263 P. 2d 237.

The jury answered special questions and returned a general verdict for plaintiff, together with a verdict for decedent's employer for damage to its truck. All post-trial motions, including a motion

for new trial, were overruled. Judgment was entered on the verdicts and defendants have appealed.

Although the action is brought by the widow of decedent, in the interest of clarity and convenience, we will refer to decedent Byas as plaintiff, as though he were living. By the same token, we will refer to defendant and cross-petitioner Day, driver of the other truck, as defendant, omitting all reference to his codefendants and cocross-petitioners.

The facts, as established by the evidence, and concerning which there is no material dispute, are substantially as follow:

The collision occurred at an intersection of well-traveled sand-gravel township roads south of Hugoton, Kansas, in the late afternoon of April 9, 1952. The main traveled portion of the east-west road was thirty feet in width, and that of the north-south road twenty-eight feet. There were no stop signs at the intersection and it was in wide-open country. The vision of a driver approaching the intersection from the west was unobstructed to the south, as was the vision to the west of a driver approaching the intersection from the south.

Defendant Day, who was driving a truck and semitrailer loaded with cattle in an easterly direction, stopped his truck approximately one-half mile west of the intersection in order to shift the position of some calves in the truck. His load totalled about 18,000 pounds, and the over-all length of the truck and semitrailer was approximately forty-three feet. When he started up it was necessary to shift through a series of gears in order to gain momentum. When about one hundred feet west of the intersection he looked to the north and south and, seeing nothing approaching, started on into and through the intersection at a speed of about fifteen miles per hour. When the front wheels of the cab part of his truck were several feet east of the east edge of the intersection his truck started "jackknifing." From the evidence it appears there is no question but that the "jackknifing" was the result of a collision between his truck and the one being driven from the south by plaintiff Byas. Defendant, who was alone in his truck, was knocked unconscious and remembered nothing further about the collision. His truck came to rest on the back slope of the north ditch of the east-west road facing east on its wheels, and the front end was approximately seventy feet east of the east edge of the intersection.

The physical facts established that at approximately the same

time defendant's truck approached the intersection from the west the truck driven by plaintiff approached from the south. Plaintiff also was driving alone, and died instantly as the result of the collision. Testimony of investigating officers, who arrived at the scene shortly thereafter, placed the point of impact at approximately four feet west of the east edge of the north-south road, and approximately five feet south of the north edge of the east-west road. It further indicated that the left front corner of plaintiff's truck collided with defendant's truck approximately over the right front wheel. Plaintiff's truck came to rest on the main-traveled portion of the east-west road headed almost due south, upside down, about sixty feet east of the east edge of the intersection. There were skid marks south of the intersection for a distance of sixty-eight to one hundred five feet, which, from the evidence, undoubtedly were caused by plaintiff's truck. There was opinion evidence, but which will not be detailed, to the effect that plaintiff's truck was traveling considerably faster than defendant's truck.

In addition to the foregoing, there was other evidence concerning whether plaintiff was wearing his glasses, as to his physical condition, and touching upon speed charts, stopping distances, and so forth, none of which, for our purposes, need be related.

For the time being we pass over certain matters occurring during the trial and take up the jury's findings.

In its answers to special questions the jury found:

1. That defendant's truck entered the intersection at a speed of fifteen miles per hour.

2. That there was insufficient evidence to determine the speed of plaintiff's truck at the time it entered the intersection.

3. That there was no negligent act of plaintiff which proximately caused the accident.

. . . . . . . . . . . . . .

5. That defendant was guilty of negligent action which proximately caused the accident.

6. That such negligent action on the part of defendant consisted in failing to keep a proper lookout for other users of the highway lawfully thereon, and in driving his vehicle without due regard for other users of the highway.

7. That the front wheels of defendant's truck had completely passed beyond the east side of the intersection at the time of impact.

8. That defendant's truck entered the intersection first.

9. That less than one second elapsed after defendant's truck entered the intersection until plaintiff's truck entered the intersection.

10. That had plaintiff looked he could have seen defendant's truck from a point one-quarter mile south of the intersection.

11. That if plaintiff had seen defendant's truck when he, plaintiff, was one-quarter mile south of the intersection, he could have stopped his truck prior to collision.

12. That prior to entering the intersection defendant looked to see whether traffic was approaching from the south.

13. That defendant was one hundred feet west of the intersection when he last looked toward the south.

14. That when defendant last looked to the south plaintiff's truck was visible.

15. That there was nothing to prevent defendant from seeing the approaching truck driven by plaintiff.

16. That defendant did not see plaintiff's truck when he last looked to the south.

17. That when defendant last looked to the south the speed of his truck was twelve miles per hour.

18. That at a speed of twelve miles per hour defendant could have stopped his truck in approximately eighteen feet.

19. That defendant did not see plaintiff's truck at any time prior to the collision.

The abstracts in this court consist of 159 pages, many of which are taken up with arguments in the trial court on post-trial motions. In addition, the court has been furnished with numerous photographs of the intersection, the approaches thereto, and the adjacent countryside. The briefs consist of 237 pages.

Because of the disposition being made of this appeal, we consider it unnecessary to take up and discuss each of the contentions advanced by defendant for a reversal of the judgment below. Several do, however, require discussion, among them being the order overruling defendant's demurrer to plaintiff's evidence.

We will not labor the point. As stated, the evidence was hardly in dispute in any respect. The facts, in a brief summary, already have been related. We think they show a situation concerning which reasonable minds might differ on the question of which driver had the right of way at the intersection and whether each

maintained a proper lookout for approaching traffic. These factors, combined with the legal presumption that a deceased will be presumed to have exercised due care for his own safety in the absence of evidence to the contrary, were sufficient to withstand the demurrer and justified the submission of the facts to the jury under the well-established rule pertaining to such matters.

The lower court did not err in overruling defendant's demurrer to plaintiff's evidence.

We now discuss an alleged trial error which defendant vigorously asserts is of sufficient gravity to warrant the granting of a new trial.

The trial commenced on Thursday, January 14, 1954, and continued throughout the day until six o'clock P. M. It was resumed on Friday morning and continued throughout that day until five o'clock P. M. On Saturday morning the jury was instructed, following which counsel made their arguments. At 11:45 A. M. of that day the jury retired to deliberate.

In its instructions the court quoted, without comment, from G. S. 1949, 8-550, as follows:

"(*a*) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. (*b*) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

This was the only instruction which touched upon the right of way of vehicles approaching an intersection.

After deliberating until approximately 6:30 o'clock P. M. the jury submitted to the court the following question in writing:

"If a driver is negligent just before entering an intersection, does this same driver have a legal right-of-way over another driver who enters the intersection at a later time?"

The court requested counsel to submit suggested additional instructions. Plaintiff submitted six. Defendant declined to submit any. The court did not give those submitted by plaintiff, but in response to the jury's question, and over the objection of both plaintiff and defendant, instructed as follows:

"A motorist about to enter an intersection of public roads momentarily ahead of another motorist on his right, cannot be heard to excuse his own failure to observe the approach of the other, on the presumption that the latter whom he did not see, would yield the right-of-way."

The jury then retired for further deliberation, and at approxi-

mately 12:30 o'clock A. M. Sunday submitted to the court, in writing, this further question:

"We read the law to provide that the first vehicle into an intersection has the right of way. Would the negligence of Mr. Day prior to entering the intersection have a voiding effect upon his right of way?"

In response to this second question by the jury the court, over defendant's objection, gave the following additional instruction:

"When a motorist approaches an intersection of public roads, he is not only required to look for approaching traffic, but he must look in such a discerning and careful manner as will enable him to see it when it is in plain view to be seen, and when he fails to do so, he is negligent.

"A motorist's negligence in failing to look for approaching traffic, or, if he looks, fails to see approaching traffic which is there to be seen cannot be excused by him if his vehicle enters the intersection momentarily ahead of another motorist on his right.

"If you find from the evidence that one vehicle entered the intersection only a fraction of a second before the other and if you further find that the driver of that vehicle would have seen that he could not safely proceed had he looked and seen what there was to be seen, the driver of such vehicle was negligent.

"If you find from the evidence that the vehicles approached the intersection at substantially the same time, the driver of the vehicle approaching on the right was justified in assuming that the driver of the vehicle approaching on the left would yield to him the right of way.

"If you further find that the driver of the vehicle on the right, relying on this assumption, proceeded towards the intersection until it was too late for him to do anything to avoid the collision, then his doing so was not negligence."

Shortly thereafter the jury returned the verdicts and answers to special questions heretofore referred to.

Defendant contends that the giving of these additional instructions, and particularly the last one, under all of the circumstances in which they were given, constitutes prejudicial error and entitles him to a new trial.

In our opinion there is substantial merit to this contention.

When the jury submitted its second question, in the early hours of Sunday morning, it had been deliberating for approximately twelve hours. Common knowledge tells that under such circumstances the jury (any jury) was "tired" and wanted to retire for the night, or "get it over with." The record affirmatively shows that on neither occasion when the court gave the additional instruction did it admonish the jury that it was to consider it in connection with those previously given. In fact, the original instructions given at the close of the evidence failed to contain any such admonition with

respect to considering all of the instructions together rather than singling out any particular one as being the law of the case. The record further affirmatively shows that during its deliberations the jury had answered questions 3, 5 and 6 "no agreement," and then subsequently answered them in the manner indicated above. In other words, having reached "no agreement" as to negligence proximately causing the accident on the part of either plaintiff or defendant, it shortly thereafter absolved plaintiff and convicted defendant, and found the latter's negligence to be as specified in answer number 6, *supra*.

We do not mean to say that in all cases it is error for a court to give to a jury further instruction after it has commenced deliberation, and neither do we hold that it is error to hold a jury in deliberation until a late hour at night. Further, we do not hold that jurors have no right to "change their minds." The question here is whether all of the circumstances, taken together, were likely to produce, to defendant's prejudice, the result that ultimately came about.

Aside from what already has been said, we think the additional instructions had the practical effect of "pin-pointing" the alleged negligence of defendant to the exclusion of other evidence, including the fact defendant's truck entered the intersection first, and, for all practical purposes, absolved plaintiff of all blame prior to the collision. In other words, the instructions in question undoubtedly emphasized in the minds of the jurors one factual situation to the exclusion of others. Taking all of these circumstances into consideration, including the time when the additional instructions were given, the status of the jury's deliberations at the time they were given (as shown by testimony of jurors at the hearing on the motion for new trial), the changes in the answers to special questions, and the abrupt "about face" and arrival at a verdict very shortly after receiving the second additional instruction, and examining the record as a whole, we are unable to say that defendant was not prejudiced by what transpired. For a general discussion of the subject matter, see *Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, 139 P. 2d 859, (commencing on p. 289) and cases cited therein; also *Eikmeier v. Bennett*, 143 Kan. 888, 57 P. 2d 87 (commencing at the bottom of p. 897).

From what has been said it follows that the trial court erred in overruling defendant's motion for a new trial.

Many other contentions by defendant on other aspects of the

case have not been overlooked or ignored. All have been examined and considered, but, in our opinion, either are found to be without substantial merit or, in view of our conclusion just announced, require no discussion.

The judgment of the trial court is therefore reversed with directions to grant a new trial generally to all parties to the action.

ROBB, J., not participating

THIELE, J., dissenting in part.

I agree that correct disposition has been made of this appeal if it be assumed the trial court did not err in overruling the defendant's demurrer to the plaintiff's evidence. In my opinion, however, the plaintiff's evidence disclosed that her deceased husband was guilty of negligence which contributed to his injury and death and that the demurrer should have been sustained.